UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————X

KAY BOURABAH,                          :
                                       :
                    Plaintiff,         :
        -against-                      :
                                       :
                                       :                08 CV 05693 (LTS)
NEW YORK STATE DIVISION OF HOUSING     :
AND COMMUNITY RENEWAL and              :
SOUTHBRIDGE TOWERS, INC.               :
                                       :
                    Defendants.        :
                                       :
————————————————————————X


DECLARATION OF KAREN BEKKER IN SUPPORT OF SOUTHBRIDGE TOWERS, INC.'S
MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)

        I, KAREN BEKKER, declare as follows:

        1.       I am a member of the bar of this Court and associated with the firm of Norris

McLaughlin & Marcus, P.A., attorneys for defendant Southbridge Towers, Inc.

        2.       Attached hereto, at the letter tabs indicated, are true and correct copies of the

following documents:

| TAB | DESCRIPTION | DATE |
|-----|-------------|------|
| A | Federal Complaint of Kay Bourabah | June 23, 2008 |
| B | Decision and Judgment of Justice Jane S. Solomon | February 26, 2008 |
| C | Order of New York State Division of Housing and Community Renewal | April 2007 |

        I declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is

true and correct.

Dated: August 26, 2008
     New York, NY

/s/ Karen Bekker
Karen Bekker

# EXHIBIT A

# UNITED STATES DISTRICT COURT

<table>
<tr><td>Southern</td><td>District of</td><td>New York</td></tr>
</table>

KAY K. BOURABAH **JUDGE SWAIN**

Plaintiff,

**SUMMONS IN A CIVIL ACTION**

v.

NEW YORK STATE
DIVISION OF HOUSING and
COMMUNITY RENEWAL and
SOUTHBRIDGE TOWERS INC.

CASE NUMBER **08 CIV 5693**

TO: (Name and Address of Defendant)

New York State Division of       (and)    Southbridge Toewrs, Inc.
Commnunity Renewal                        Management Office
Attorney General State of New York        90 Beekman Street
120 Broadway                              New York, NY  10038
New York, NY  10271

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY

Robert A. Katz
277 Broadway, Ste 1410
New York, NY  10007
Tel.: 212-587-2400, ext. 13
Fax:  212-587-2410

an answer to the complaint which is served on you with this summons within 60 days after service of thi
summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this ac |on
must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON
Clerk

(BY) Deputy Clerk

Date    JUN 2 4 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

KAY K. BOURABAH,

                   Plaintiff,

    -against-

NEW YORK STATE
DIVISION OF HOUSING
and COMMUNITY RENEWAL,
and SOUTHBRIDGE TOWERS INC.,

                 Defendants.
------------------------------------------------------X

**VERIFIED COMPLAINT**

Dkt _____

Plaintiff, by her attorney Robert A. Katz, alleges as follows:

### Preliminary Statement

1.     This is an action for injunctive relief pursuant to 42 U.S.C. see 1983 to protect rights secured by the Due Process clause and the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

2.     Plaintiff in this action challenges the procedures used by the defendants to adjudicate issues that can lead to the eviction of the plaintiff without according procedural due process of law in that plaintiff challenges Sections <u>N.Y.C.R.R. 1700 et. seq.</u>

3.     That non-governmental employees of the landlord-defendant Southbridge Towers Inc. (Hereinafter the "Housing Company") are authorized and did make findings such as would ordinarily be made by a court on the trial level, these findings being at all times in the self interest and to the benefit and own interest of a biased Housing Company with the defendant New York State Division of Housing and Community Renewal (hereinafter "DHCR") then acting as an appellate forum wherein the plaintiff is required and did file a Petition for Administrative Review.

3.     Once defendant DHCR affirmed the findings of the defendant Housing Company plaintiff will be evicted at a pro forma ministerial proceeding in the Housing Part

of the New York City Civil Court wherein all issues have already been resolved by the
Housing Company and affirmed by the defendant DHCR which prior determination precludes
the Housing Court Judge from any examination of the merits.  Thus plaintiff will suffer
irreparable injury of eviction from her home for which there is no adequate remedy at law.

### Jurisdiction

4.    Jurisdiction over this suit is conferred upon this Court by 28 U.S.C. see 1343
(3) as an action to redress the deprivation, under color of state law, statute, ordinance,
regulation and custom or usage, of rights, privileges and immunities secured by the United
States Constitution.

5.    Jurisdiction is also conferred on this Court by 28 U.S.C. sec. 1331 (a) in that
the matter in controversy exceeds the value of $75,000 exclusive of interest and costs, and
arises under the Constitution of the United States in that plaintiff may suffer the loss of the
leasehold and shares to the subject apartment of which the plaintiff claims to be the assignee
and that the termination of plaintiff's tenancy and plaintiff and her infant daughter's
dislocation from the subject apartment including the damage of mental anguish and resulting
discomfort, will damage plaintiff individually in excess of $75,000.

### Parties

6.    Plaintiff Kay K. Bourabah resides and occupies apartment 18B at 333 Pearl Street, in
the County, City and State of New York and thus is situated in the boundaries, venue and
jurisdiction of this Court.

7.    Defendant DHCR is a governmental agency or entity of New York State charged with
the obligation inter alia of supervision of this Mitchell-Lama complex known as Southbridge
Towers Inc..

8.    Defendant Southbridge Towers Inc. is an Article II housing company organized under
the Private Housing Finance Law of the State of New York also known as the Mitchel Lama
Law and is the owner of the subject complex.

Statutory and Regulatory Scheme

9.      DHCR authority to promulgate regulations derives from PHFL Sec 32 (3) which is a

New York State statute relating to Mitchell-Lama developments.  DHCR regulations

applicable to Mitchell-Lama housing companies are set forth at Title 9 NYCRR, subtitle S

Chapter IV parts 1700 through 1750.

10.     Plaintiff herein seeks to excise, strike and nullify the procedure under the

aforementioned regulations that allow the defendant Housing Company to make binding

initial findings akin to a trial court.

Factual Allegations of Plaintiff

11.     Plaintiff at all times relevant was the daughter of decedent Z'hour Aiello and the

stepdaughter of Robert J. Aiello.

12.     In or about 1984 Robert J. Aiello rented a rent stabilized apartment at 176 Thompson

Street, New York, New York where he lived and stored his inventory as his work was  is a

licensed peddler with his tables at Prince Street, New York, New York.

13.     In 1992 the late Z'hour Aiello and Robert Aiello married and set up their home  t the

176 Thompson Street apartment where they lived with the inventory and both then work d

the peddler stand together.

14.     In or about 1996 the Aiellos put their names down on a waiting list for Southbri ge

Towers.

15.     The Aiellos obtained the subject apartment at Southbridge Towers in October 20 )

and upon information and belief paid approximately $~~12,000~~ 10,000 for the shares and were  Ke

provided with a proprietary co-op lease.

16.     Prior to moving into Southbridge Towers Z'hour Aiello was diagnosed with

cancer/leukemia condition.

17.     While initially the apartment at Southbridge Towers was intended and represente  that

the Aiellos would be the only residents when the paper work was being completed in or

about April 2000, it was subsequently decided by or at the time the Aiellos took actual

occupancy in or about October 2000 that because of the degeneration of Z'hour Aiello'

condition, that the Aiellos prevailed upon the plaintiff to move into the subject apartment at

Southbridge Towers with plaintiff's infant daughter who was then one year of age.

18.     The records of Southbridge Towers do not dispute the fact that the daughter and

infant granddaughter were disclosed upon amended forms and that plaintiff complied by

executing income affidavits along with the Aiellos.

19.     That when the Aiello's moved to Southbridge Towers they still retained the subject

176 Thompson Street apartment where they stored inventory for their peddler tables on

Prince Street.  Also, from time to time a visiting guest or family member would occup ' such

apartment for the duration of the visit.

20.     Also, in 2001 the Aiello's were able to purchase what they considered a weeker l:

house in New Jersey at the time of the purchase in 2001.  The funds upon information and

belief for this purchase were not derived from income but from savings and investment .

21.     In midsummer 2003 plaintiff and the Aiello's became aware that for Mrs. Aiello to

survive she would have to undergo a bone marrow transplant.  It then took some time to find

a match which was ultimately found in Mrs. Aiello's sister.

22.     At this time, after the Christmas season 2003, the Aiello's suspended the peddling

business as the doctors informed the Aiello's that it would take about a year to medically

prepare Mrs. Aiello for the transplant.

23.     In the summer of 2003 the Aiello's discussed the uncertainty of the circumstances

with the plaintiff and advised plaintiff to file an application for succession as to the subject

apartment.

24.     It is undisputed that such application was filed by plaintiff in September 2003.  It is

also undisputed that the Housing Company lost the application and failed to notify plaintiff

this fact although in September 2003 the plaintiff paid a $250 processing fee.

25.    In May 2004 Mrs. Aiello entered the hospital for work relating to the preparatio for the transplant.

26.    In or about June 2004 the plaintiff presses inquiry on her first application to the Housing Company and finally learns that the application was lost.

27.    The inquiry was pressed in June 2004 because it was becoming apparent that Mr. Aiello was in a perilous state.

28.    The day before the death of Mrs. Aiello a document was executed at Beth Israel Hospital in New York City wherein the Aiello's effected a transfer of shares and surrender of the apartment to plaintiff. This occurred on June 20, 2004 and Mrs. Aiello died June 21, 2004. Plaintiff avers that said transfer by assignment created a protected property interest in the plaintiff as relates to the leasehold.

29.    In the summer of 2004 the plaintiff filed a new application which was determined by the Housing Company wherein adverse findings were made by the Housing Company.

<u>First Claim for Relief</u>

30.    As alleged above, defendant Housing Company is in the process of evicting the plaintiff based upon factual findings made by the Housing Company.

31.    Said findings were then affirmed by the Commissioner of the DHCR on a Petition For Administrative Review which is an appeals process.

32.    Thereafter the Supreme Court upon judicial review upholding the Commissioner ruled that under New York law found the plaintiff is not entitled to due process of law. See <u>Bourabah v. DHCR</u> (Solomon, J Supreme New York County Index 4058/2007).

33.    It is submitted that the procedure of allowing the defendant Housing Company to make factual binding determinations at the trial stage wherein these determinations are made by a sales manager of the Housing Company who is not impartial in its own interest and for its own benefit violates procedural due process of law in that such determinations can only be made by a governmental official sworn to uphold the Constitution of the United States If

America and sworn to uphold the Constitution of the State of New York.

Second Claim for Relief

34.    In no case other than in certain Mitchell-Lama's supervised by defendant DHCF  is a landlord allowed under New York State Law to make initial binding trial findings.

35.    In almost every other instance and circumstances a landlord seeking to evict a te nant must file a sworn petition, application or claim to a governmental entity, i.e. Housing  Court, DHCR, Housing Preservation and Development where in all circumstances the initial findings at trial level will be made under New York Law before a Judge or Administra ive Law Judge who will be a government employee (attorney) who is impartial.

36.    Plaintiff avers that the issue aforedescribed must have the Court apply either str ct scrutiny or at the minimum an intermediate rank of scrutiny.

37.    Plaintiff further avers that the State of New York can not justify the aforedescr bed disparity on discrimination in the adjudicatory process, as relates to equal protection o law under the Fourteenth Amendment to the United States Constitution.

PRAYER FOR RELIEF

38.    WHEREFORE, plaintiffs respectfully pray that this court:

    1)    Assume jurisdiction of this cause.

    2)    Enter a final judgment pursuant to 28 U.S.C. §§ 2001, 2202 and Rules 14, 57 and 58 of the Federal Rules of Civil Procedure declaring the procedures used by defer lant in allowing the landlord Housing company to make trial findings violate the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitutic h, to extent that these procedures.

        a)    allow the Housing Company to make initial trial findings that are made by a partial and biased non-governmental employee.

        b)    fail to afford tenants an opportunity for a hearing at which they lave

the right to confront and cross-examine witnesses, to subpoena witnesses and

evidence, to have a verbatim transcription of the proceedings and to have a

decision made solely on the evidence adduced at the hearing.

3)      Enter a permanent injunction pursuant to Rule 65 of the Federal Rules of Civil

Procedure (a) permanently enjoining defendants from continuing any of the patterns or

practices enumerated in paragraph "2" of this prayer for relief, and (b) directing defendant to

allow a meaningful hearing denovo at the trial level before either the Civil Court of the City

of New York or an Administrative Law Judge of the defendant DHCR that will conform to

constitutional requirements.

4)      Pending the hearing and determination of plaintiffs' motion for permanent

injunction, grant a preliminary injunction order pursuant to Rule 65 of the Federal Rule of

Civil Procedure requiring defendant to forthwith stay any proceeding in which the plaintiff

could suffer eviction from the subject apartment.

5)      Grant plaintiffs their costs herein and reasonable attorneys' fees.


Dated:          New York, New York
                June 23   , 2008

                                                by:  _____
                                                     Robert A. Katz
                                                     Attorney for Plaintiff
                                                     277 Broadway, Suite 1410
                                                     New York, NY  10007
                                                     Tel.: 212-587-2400, ext. 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

KAY K. BOURABAH,

                                Plaintiff,                    VERIFICATION

            -against-                                    Dkt _____

NEW YORK STATE
DIVISION OF HOUSING
and COMMUNITY RENEWAL,
and SOUTHBRIDGE TOWERS INC.,

                                Defendants.
------------------------------------------------------X

STATE OF NEW YORK          )
                           ) ss:
COUNTY OF NEW YORK         )


        KAY K. BOURABAH being duly sworn, deposes and says:

    1.      that I am the plaintiff in the within action.

    2.      that I have read the complaint.

    3.      that I here swear to the truth and accuracy of the within complaint as to each

allegation except as to those allegations made upon information and belief and as to the le

allegations I believe them to be true.


                                        _____
                                        Kay K. Bourabah

Sworn to before me this  23
day of June, 2008

_____
Notary Public

        Robert A. Keta
        Notary Public State of New York
        County of Queens
        Qualified County of Queens
        02KA 2046368
        Term expires December 31, 2009

# UNITED STATES DISTRICT COURT

Southern _____ District of _____ New York

KAY K. BOURABAH **JUDGE SWAIN**

Plaintiff,                          SUMMONS IN A CIVIL ACTION

v.

NEW YORK STATE                      CASE NUMBER
DIVISION OF HOUSING and
COMMUNITY RENEWAL and               **08 CIV 5693**
SOUTHBRIDGE TOWERS INC.

TO: (Name and Address of Defendant)

New York State Division of    (and)    Southbridge Toewrs, Inc.
Community Renewal                      Management Office
Attorney General State of New York     90 Beekman Street
120 Broadway                           New York, NY  10038
New York, NY  10271

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY

Robert A. Katz
277 Broadway, Ste 1410
New York, NY  10007
Tel.: 212-587-2400, ext. 13
Fax:  212-587-2410

an answer to the complaint which is served on you with this summons within 60 days after service of thi
summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be take:
against you for the relief demanded in the complaint. Any answer that you serve on the parties to this ac lion
must be filed with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**
Clerk                                  JUN 2 4 2008
                                       Date
(By) Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Docket No.          Year:

_____

, Plaintiff,

-against-

NEW YORK STATE
DIVISION OF HOUSING AND COMMUNITY RENEWAL
and SOUTHBRIDGE TOWERS, INC.

Defendants.

_____

COMPLAINT

_____

Robert A. Katz
ATTORNEY AT LAW
Attorney for Petitioner
277 Broadway
Ste 1410
New York, NY 10007
(212) 587-2400, x 13

_____

To:

Attorney for

_____

Service of a copy of the within

is hereby admitted.

Dated,

Attorney for

_____

=======  NOTICE OF ENTRY  =======

PLEASE TAKE NOTICE that the within is a true copy of
a          duly entered in the Office of the Clerk of the
within named Court on

Date:

Yours, etc.

Robert A. Katz
ATTORNEY AT LAW
Attorney for Petitioner
277 Broadway
Ste 1410
New York, NY 10007
(212) 587-2400, x 13

To:

=====  NOTICE OF SETTLEMENT  =====

PLEASE TAKE NOTICE that an order
of which the within is a true copy will be presented for
settlement to the Hon.

one of the judges of the within named Court, at
on the          day of          19
at                      M.
Dated

Yours, etc.

Robert A. Katz
ATTORNEY AT LAW
Attorney for Petitioner
277 Broadway
Ste 1410
New York, NY 10007
(212) 587-2400, x 13

To

Attorney for

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: JANE S. SOLOMON                    PART SS
                            _Justice_

Index Number : 405818/2007          INDEX NO.

BOURABAH, KAY K.                    MOTION DATE

vs.                                 MOTION SEQ. NO.

HOUSING & COMMUNITY RENEWAL         MOTION CAL. NO.

SEQUENCE NUMBER : # 001

ARTICLE 78

...e read on this motion to/for _____

PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...

Answering Affidavits — Exhibits

Replying Affidavits

Cross-Motion:   ☐ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion _petition is decided_

_in accordance with the annexed memorandum decision_
_and judgment_

Dated: _____                      JANE S. SOLOMON   J.S.C.

NON-FINAL DISPOSITION

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE _____ FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 55
------------------------------------------------------------X

In the Matter of the Application of                                          INDEX No.406818/07
KAY BOURABAH,

                                        Petitioner,

For a Judgment Under Article 78 of
the Civil Practice Law and Rules                                    DECISION AND JUDGMENT

                -against-

NEW YORK STATE DIVISION OF HOUSING
AND COMMUNITY RENEWAL

                                        Respondent,
------------------------------------------------------------X

JANE S. SOLOMON, J:

      Motion sequence numbers 001, 002 and 003 are consolidated for disposition.

      In motion sequence one, petitioner, Kay Bourabah ("Bourabah" or "petitioner") moves

pursuant to CPLR Article 78 to set aside an April 20, 2007 decision of respondent, New York

State Division of Housing and Community Renewal ("DHCR") that denied petitioner's

application for succession rights to a Mitchell-Lama apartment and she also moves to dismiss the

eviction proceeding against her. DHCR cross-moves to dismiss the petition. In motion sequence

002, petitioner moves by order to show cause to amend the petition to join Southbridge Towers,

Inc. ("housing company" or "Southbridge Towers") the housing company that manages the

Mitchell-Lama complex where petitioner resides, as a respondent and to add a claim that

DHCR's procedures violate petitioner's due process rights. Petitioner also seeks to stay a

November 5, 2007 housing court trial.[1] In motion sequence 003, petitioner appears to seek a

---

    [1] The court declined to sign a temporary restraining order staying the housing court

proceeding.

declaration that DHCR's procedures violate her due process rights, which seems to duplicate relief sought under the proposed amended petition. Despite the procedural impairment, the due process challenge is addressed herein on its merits.

## BACKGROUND

Southbridge Towers is an Article II housing company organized under the Private Housing Finance Law of the State of New York, also known as the Mitchell-Lama Law, and it is the owner of the subject premises.

In October, 2000, petitioner's parents, Robert and Z'hour Aiello ("tenants", "parents" or "the Aiellos"), leased a one bedroom Mitchell-Lama apartment in the Southbridge Towers housing complex located at 333 Pearl Street in Manhattan. It is undisputed that from 1984 through December, 2003, the Aiello's also leased an apartment in a residential building located at 176 Thompson Street in Manhattan and that in 2001 they purchased a home in New Jersey.

Petitioner alleges that, about two weeks after her parents signed their lease for the Southbridge Towers apartment, petitioner and her infant daughter moved into the apartment with her parents. Thereafter, in February, 2001, the Aiellos submitted two identical "notices of change of family composition" to the housing company indicating that petitioner and petitioner's daughter had moved into the apartment.

Under the DHCR's regulations, the tenants-of-record of apartments in state aided Mitchell-Lama housing projects must execute annual income affidavits which, *inter alia*, include a list of all household members living in the apartment. The Aiellos submitted income affidavits for calendar years 2000 through 2003 that list the Aiellos, petitioner and petitioner's daughter as the apartment's occupants.

In September, 2003, petitioner submitted a "preliminary succession rights application" to the housing company presumably because the Aiellos' had, or were planning to, vacate the apartment. However, the application did not specify any reason for the vacancy (i.e., that the Aiellos moved out) or identify when the tenants-of-record had vacated, or would vacate, the apartment. In June, 2004, petitioner submitted a second "preliminary succession rights application" that contained the same information as the earlier submission but, even though this time the application stated that the Aiello's had vacated the apartment, it did not specify the date that they left. In addition, in support of the application, the Aiello's sent a letter to the housing company dated June 9, 2004, notarized on June 20, 2004, that stated that the Aiellos were relinquishing their shares to petitioner. Petitioner submitted a third "preliminary succession rights application" to the housing company in July, 2004.

In February, 2005, the housing company found petitioner eligible for succession and submitted her application to DHCR for the required review. DHCR rejected the application and instructed the housing company to submit proof of the Aiello's residence at Southbridge Towers. Following the housing company's re-submission, DHCR rejected the application a second time for lack of sufficient documentation of the Aiellos' residence and, thereafter, the housing company sent petitioner a letter requesting that petitioner submit, among other things, copies of tax returns for all the apartment occupants for 2000 through 2004.

Although petitioner submitted the tax returns and some additional documents, in a letter to DHCR dated May 30, 2006, the housing company concluded that petitioner was not eligible for succession because she had not cohabited with her parents in the subject apartment for two years before the Aiellos allegedly vacated the apartment in 2004 (See, 9 NYCRR Section 1727-

-3-

8.3[a]²).  The denial letter stated, *inter alia* that, in a conversation with a housing company

representative, petitioner admitted that she had never resided in the apartment with her parents

and, in addition, the Aiellos' 2003 tax return listed Thompson Street, not Southbridge Towers, as

their current address (Record, Ex. A-10).

Petitioner challenged the housing company's decision stating that she never admitted that

she did not reside in the apartment with her parents and that the Thompson Street address on the

Aiellos' 2003 tax return was an error.  At first she claimed that the Thompson Street apartment

had been maintained for a short time for other family members but later she averred that the

apartment had been used mostly for storage.  Despite petitioner's denials, the housing company

adhered to its decision denying petitioner succession rights.  Petitioner requested administrative

review of that decision by DHCR.

In a November 29, 2006 letter DHCR requested that petitioner submit additional

documentation including, *inter alia*, the date that the tenants of record vacated the apartment and

documentary evidence that they occupied the apartment as their primary residence for two years

prior to that date (Record, Ex. A-16).  After reviewing the records, DHCR's Deputy

Commissioner, David B. Cabrera, determined that the record did not support a conclusion that

---

² 9 NYCRR Section 1727-8.3(a) provides in pertinent part:

> [I]f the tenant has permanently vacated the housing accommodation,
> any member of such tenant's family, . . ., who has resided with the
> tenant in the housing accommodation as a primary residence for a
> period of not less than two (2) years, has been listed on the income
> affidavit and/or on the Notice of Change to Tenant's Family . . .
> immediately prior to the permanent vacating of the housing
> accommodation be the tenant may request to be named as a
> tenant on the lease and on the stock certificate. (Emphasis added)

the Aiellos ever occupied the apartment as their primary residence or that they occupied the apartment as their primary residence from 2002 through 2004 and, as a result, the Deputy Commissioner determined that petitioner's claim for succession rights must fail.

The Deputy Commissioner stated that because the documents that petitioner submitted do not show a date when the Aiellos vacated the apartment, he would use June 20, 2004, date that the Aeillos notarized their letter in support of petitioner's succession application, as the date for setting the two year qualification period in this matter. Thus, it was necessary that petitioner demonstrate that the Aiellos' occupied the Southbridge Towers apartment as their primary residence from June 20, 2002 through June 20, 2004.

The Deputy Commissioner found that although petitioner's name appeared with the Aiellos on the 2001, 2002 and 2003 income affidavits, the other documentary evidence in the record, in particular the Aiellos'2003 tax return; the Aiello's 2000, 2001and 2002[3] renewal leases for the Thompson Street residence; petitioner's inconsistent statements about the purpose of the Thompson Street apartment and title documents from New Jersey showing that the Aiellos took title to a residential property in New Jersey two years before they allegedly vacated Southbridge Towers, expressly contradicted the income affidavits and do not support the conclusion that the Aiellos occupied the apartment as their primary residence from June, 2002 through June, 2004. (Record, Ex. B-1)

This Article 78 petition followed. Petitioner commenced the proceeding pro se, but is represented by counsel on motions 02 and 03.

---

[3] The last renewal lease for the Thompson Street apartment expired on September 30, 2003.

## DISCUSSION

On judicial review of an agency action under CPLR Article 78, the courts must uphold the agency's exercise of discretion unless it has no rational basis or the action is arbitrary and capricious (*Pell v. Bd. of Ed. Union Free School District*, 34 N.Y.2d 222, 230-231[1974]). "The arbitrary and capricious test chiefly relates to whether a particular action should have been taken or is justified . . . and whether the administrative action is without foundation in fact. Arbitrary action is without sound basis in reason and is generally taken without regard to the facts" (*Pell*, 34 N.Y.2d at 231). Rationality is the key in determining whether an action is arbitrary and capricious or an abuse of discretion. The court's function is completed on a finding that a rational basis supports the agency's determination (*See, Howard v. Wyman*, 28 N.Y.2d 434 [1971]). Where the agency's interpretation is founded on a rational basis, that interpretation should be affirmed even if the court might have come to a different conclusion (*See, Mid-State Management Corp. v. NYC Conciliation and Appeals Board*, 112 A.D.2d 72 [1st Dept 1985], aff'd 66 N.Y.2d 1032 [1985]).

Moreover, where, as here, the agency's determination involves a factual evaluation within the area of the agency's expertise and is amply supported by the record, the determination must be accorded great weight and judicial deference (*Flacke v. Onondaga Landfill Systems, Inc.*, 69 N.Y.2d 355, 363 [1987]).

### A. Due Process

Petitioner claims that respondent's procedure violates due process because the agency's procedure does not provide her with a hearing and an opportunity to be heard. That claim is without merit. It is well settled that in order to claim a due process violation, an individual mus

-6-

demonstrate that he/she possesses a protected property interest sufficient to trigger due process

protections ( *Matter of Daxcor Corp. v. State of N.Y. Dept. Of Health*, 90 N.Y.2d 89, 98 [1997]

[*cert. denied* 523 US 1074], citing *Board of Regents v. Roth*, 408 U.S.564; *Matter of Willie*

*Sumpter v. White Plains Housing Authority*, 29 N.Y.2d 420 [1972]; *see also, Application of*

*Cadman Plaza North v. DHPD*, 290 A.D.2d 344 [1st Dept. 2002]).

In *Cadman Plaza North, Inc.* at 344, a case where the petitioner challenged, on due

process grounds, HPD's procedures regarding succession rights, the court stated:

> Property interests 'are defined by existing rules or
> understandings that stem from an independent
> source such as state law ....' Thus, '[i]n considering
> whether a legitimate claim of entitlement or right,
> is granted by state law, the focus is on the relevant
> statute, regulation, or contract establishing
> eligibility for the benefit at issue ....' Here,
> petitioner lacked such property interest with
> respect to the direct succession because, under the
> regulations, occupancy of a subject apartment is
> conditioned on respondent agency's approval
> and the form of the agreement must be
> approved by the respondent.

(Internal citations omitted)

In that case, the First Department held that the agency retained discretion in directing who

may succeed to an apartment, "and it is this element of discretion that negates petitioner's claim

of a protected property interest. Thus, petitioner is not entitled to a full evidentiary hearing"

(*Cadman Plaza North, Inc. v. DHPD*, 290 A.D.2d at 344 [internal citations omitted]; *see also,*

*Pietropolo v. DHPD*, 39 A.D.3d 406 [1st Dept 2007][petitioner not entitled to an evidentiary

hearing because the regulation under which he claimed succession rights did not provide for a

hearing]; *Mayfield v. Esplanade Gardens, Inc.*, 30 A.D.3d 296 [1st Dept 2006]["Whatever the

scope of due process concerns raised by HPD's rules providing for succession rights in Mitchell-Lama housing, a full blown evidentiary or "in person" hearing was not required][internal citations omitted]). Earlier this month, the First Department again found that a petitioner challenging denial of his succession rights to a Mitchell-Lama apartment is not entitled to an evidentiary hearing because the procedures provided by the regulation to determine succession satisfy due process *(Hochhauser v. DHPD*, 2008 WL 384223 [1st Dept, February 13, 2008]). In *Hochhauser*, the court held that the agency was entitled to consider inconsistencies among the documents submitted (including tax returns), and that the procedures provided for in the governing regulations satisfy due process without the need for an evidentiary hearing (*id.*).

As in *Cadman Plaza, Pietropolo, Mayfield* and *Hochhauser*, the petitioner in this case does not have the right to an "in person" administrative hearing because she does not have a protected property interest in the subject apartment. The regulations pursuant to which she is claiming succession rights give DHCR the discretion to determine who may succeed to an apartment. Here, petitioner exhausted all the protections afforded her by the statutory regulations. First, she interposed a succession rights claim with the housing company and when that claim was denied by the housing company, she commenced an administrative appeal. Dissatisfied with the administrative decision, she commenced this Article 78 proceeding. Thus, petitioner has received all the process she is due.

B. The April 20, 2006 Decision

The Deputy Commissioner's determination that petitioner did not sustain her burden of establishing her entitlement to succession rights to her parents' apartment had a rational basis and must be upheld.[4]

To qualify for succession rights, an individual must: 1) be a family member of the former tenant of record; 2) have primarily resided with the tenant of record for two years prior to the tenant's death or vacatur and 3) have been named on the income certifications and/or notice to change family composition filed by the tenant during the two year period preceding his/her death or permanent vacatur (*See*, 9 NYCRR Section 1727-8.3(a); *Shuet Ying Lee v. DHCR*, 276 A.D.2d 444 [1st Dept 2000]).

Primary residence is defined in the regulations as the housing accommodations in which a person actually resides and maintains a permanent and continuous physical presence ( 9 NYCRR Section 1727-8.2(5). Proof of primary residence must consist of the listing of an individual on the annual income affidavit and/or the notice to change family composition coupled with other corroborating empirical evidence, including, but not limited to, tax returns, voting records, drivers license and motor vehicle registration (*See, e.g. Studley v. DHPD*, 277 A.D.2d 101 [1st Dept 2000]).

Petitioner has failed to meet her burden of proving all the elements of her succession rights claim. Petitioner asserts that the income affidavits and tax returns are proof that she co-

---

[4] Petitioner submitted with her petition several letters and affidavits from her father and the father of her child which were not part of the administrative record. In determining this Article 78 petition, this court will not consider any documents that were not made part of the administrative record (*Rizzo v. New York State Division of Housing and Community Renewal*, 16 A.D.3d 72, 75 [1st Dept 2005], *aff'd* 6 N.Y.3d 104 [2005]).

resided with her parents in the Southbridge Towers apartment and that the apartment was her parents' primary residence. However, while income affidavits are some proof of residency, they are one factor among many that the agency considers in determining residency. Here, in rejecting the application, the Deputy Commissioner was entitled to consider the inconsistencies in the documents submitted, including: the Aiellos' continued lease of the Thompson Street apartment through September, 2003 (Record, Ex. A-5); the Aiellos' 2001 purchase of the New Jersey residence (Record, Ex. A-8); petitioner's inconsistent explanation regarding the use of the Thompson Street apartment and the fact that the Aiello's provided the Thompson Street apartment address on their 2003 tax return[5] (Record, Ex. A-10). Although the income affidavits support petitioner's claim of primary residence, the tax return, Thompson Street leases and records regarding the purchase of the New Jersey residence do not. Thus, the Deputy Commissioner reasonably found that petitioner failed to meet her burden of proof on the question of the length or even the existence of the co-residency as required by 9 NYCRR Section 1727-8.3(a) (See, Hochhauser v. DHPD, 2008 WL 384323; Studley v. DHPD, 277 A.D.2d 101; Pietropolo v. DHPD, 39 A.D.3d at 407).

Accordingly, it is ORDERED that the petition seeking to set aside the administrative decision dated April 20, 2006 and to dismiss the eviction proceeding is denied in its entirety; and it further is

---

[5] The Aiellos' 2001 and 2002 tax returns did use the Southbridge Towers address. The court notes, however, that an attachment to the Aiellos' 2001 tax return contains the Thompson Street address and the consolidated transcript for the Aiellos' 2004 taxes shows the New Jersey address.



ORDERED and ADJUDGED that respondent's cross motion for an order dismissing this proceeding is granted, and the petition hereby is denied and the proceeding is dismissed; and it further is

ORDERED that Motion Sequence 002, which seeks to amend the petition to add a claim that respondent's procedures regarding the determination succession rights violate due process is denied,  to amend the petition to add Southbridge, Inc. as a respondent; and to stay the Housing Court proceeding, is denied; and it further is

ORDERED that Motion Sequence 003 is denied as moot in light of the denial of her motion to amend the petition.

This decision constitutes the order and judgment of the court.


DATE: February 26, 2008



_____
J.S.C.

JANE S. SOLOMON



_____
CLERK





MAR - 6 2008

COUNTY CLERKS OFFICE
NEW YORK

-11-

# EXHIBIT C

**Eliot Spitzer**
Governor

Deborah Van Amerongen
Commissioner

### New York State Division of Housing and Community Renewal
25 Beaver Street
New York, NY 10004

KAY K. BOURABAH
333 Pearl Street, Apt. 18B
New York, New York 10038

SOUTHBRIDGE TOWERS, INC.
90 Beekman Street
New York, New York 10028
Att'n: Ms. Jill Zilker, *General Manager.*

## ORDER DENYING APPEAL

This order determines the appeal of KAY BOURABAH [the "Applicant"]. The Applicant challenged a decision that denied her claim to SOUTHBRIDGE TOWERS, INC. [the "Housing Company"] for succession rights to the tenancy of an apartment in its State-aided project. That decision found that the Applicant did not qualify for succession.

The Housing Company is subject to the New York Private Housing Finance Law [the "PHFL"] and its implementing Regulations. The NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL [the "DHCR"] regulates the Housing Company and determines this appeal pursuant to 9 NYCRR §§ 1727-1.3(g) and 1727-8.5(c).

## BACKGROUND

On or about September 7, 1996, Robert Aiello and Z'hour Aiello submitted an application to the Housing Company. That application was for a one-bedroom apartment in the Housing Company's Mitchell-Lama project. Later, they submitted an updated application dated March 30, 2000. That application listed "176 Thompson Street, Apt. D" as their address. The application listed Robert Aiello and Z'hour Aiello [Robert Aiello's wife] as the only people who would live in the requested apartment.

On April 12, 2000, the Housing Company found Robert Aiello and Z'hour Aiello eligible for admission to a one-bedroom apartment. The DHCR approved their apartment application on April 18, 2000. As a result, the Housing Company assigned them apartment "18B" [the "Apartment"], which is a one-bedroom unit. On October 6, 2000, they entered into an agreement of lease with the Housing Company for the Apartment, and thereby became the Apartment's tenants-of-record [the "Tenants"].

- 1 -

Before that, however, Robert Aiello had already entered into a renewal lease for the Thompson Street apartment. The DHCR's registration records for that rent stabilized unit show the term of that lease was October 1, 2000 to September 30, 2001. Those records also show Robert Aiello had been the registered tenant of the Thompson Street apartment since at least the year 1984, when the registration system began.

Later, the Tenants submitted two substantively identical versions of a "Notice of Change to Tenant's Household," both dated February 20, 2001, to the Housing Company. That notice informed the Housing Company that the Tenants' daughter, the Applicant, and granddaughter were additions to the Apartment's family composition. The Applicant and her daughter's "move-in" date to the Apartment was indicated to have been October 2000, the same month the Tenants executed the Apartment's initial lease.

Under the DHCR's Regulations, the tenants-of-record of apartments in State-aided, Mitchell-Lama housing projects must execute annual income affidavits for their apartments. Among other things, such required income affidavits must list all of the household members living in the subject apartment as of the affidavits' execution dates.

On April 16, 2001, the Tenants and Applicant executed the Apartment's annual income affidavit for calendar year 2000. That income affidavit listed the three of them and the Applicant's daughter as the Apartment's occupants as of that date.

According to the on-line land title records of Monmouth County, New Jersey, the Tenants later took title to a residential property at 134 Medinah Court, in Howell, New Jersey. The recording date of the title documents from that event was May 23, 2001.

Later, Robert Aiello entered into another renewal lease for the Thompson Street apartment. The term of that renewal lease was October 1, 2001 to September 30, 2002.

On April 24, 2002, the Tenants and Applicant executed the Apartment's annual income affidavit for calendar year 2001. That income affidavit listed the three of them and the Applicant's daughter as the Apartment's occupants as of that date.

Next, Robert Aiello entered into another renewal lease for the Thompson Street apartment. The term of that renewal lease was October 1, 2002 to September 30, 2003.

On May 1, 2003, the Tenants and Applicant executed the Apartment's annual income affidavit for calendar year 2002. That income affidavit also listed the three of them and the Applicant's daughter as the Apartment's occupants as of that date.

After that, the Applicant submitted a "preliminary succession rights application" dated September 9, 2003. That application was for the Applicant to claim succession to the Apartment's tenancy. In that application, the Applicant stated her "move-in" date was October 2000 and that she was the Tenants' daughter. However, she did not claim that she was either a disabled person or senior citizen. The application did not specify

any reason for the "vacancy," *i.e.* the Tenants' departure from the Apartment, or their "move-out" date, as the application form requested.

On April 23, 2004, the Tenants and Applicant executed the Apartment's annual income affidavit for calendar year 2003. That income affidavit listed the three of them and the Applicant's daughter as the Apartment's occupants as of that date. The notarization of that income affidavit occurred in Monmouth County, New Jersey, which is the same county in which the Tenants' Medinah Court residence is located.

Shortly thereafter, the Applicant submitted another "preliminary succession rights application" dated June 8, 2004. That form contained the same information as her earlier submission. The application specified that the reason for the vacancy was that the Tenants had "move[d] out," but the form did not indicate the date that occurred.

In connection with her succession claim, the Applicant also submitted an apartment application dated June 9, 2004. That application specified that the relevant family composition of the Apartment was the Applicant and her daughter.

In support of the Applicant's succession claim, the Tenants executed a letter to the Housing Company. The letter was dated June 9, 2004, but was not executed before a notary until June 20, 2004. In that letter, the Tenants stated that they were relinquishing their shares [of stock allocated] to the Apartment to their daughter, the Applicant, who had resided there with her daughter since October 2000.

Next, the Applicant submitted another preliminary succession rights application dated July 1, 2004. That form contained the same information as the Applicant's June 8, 2004-submission. The application specified that the Tenants had moved out and were relinquishing their rights [in the Apartment] to their daughter, the Applicant.

— On February 23, 2005, the Housing Company found the Applicant eligible for succession and submitted her application file to the DHCR for required review. However, on March 9, 2005, the DHCR found that the Housing Company had submitted insufficient documentation relating to the Applicant's succession claim. Accordingly, the DHCR instructed the Housing Company to submit proof of the Tenants' residence.

Later, the Housing Company resubmitted the Applicant's file to the DHCR for review. With the file, the Housing Company submitted a letter dated November 23, 2005. In that letter, the Housing Company made the following statements. The Applicant had submitted documentation regarding her parents' current residence in New Jersey. After that, the Housing Company realized that it had not requested her daughter's birth certificate and a transcript of her State income tax return for tax year 2004. However, she had refused to submit any additional documentation, assuming that since the DHCR had not mentioned those items as necessary to her claim, supplying them was not required. The Housing Company opined that the Tenants, Applicant, and her daughter would not have been comfortable sharing the small, one-bedroom Apartment. Instead, the Housing Company believed that the Applicant, her husband, and their daughter had been the only occupants. Accordingly, the Housing Company asked for a

- 3 -

directive to request transcripts of the Tenants' income tax returns from the time they signed the Apartment's lease until they transferred ownership to the Applicant.

On December 15, 2005, the DHCR again found that the Housing Company had submitted insufficient documentation relating to the Applicant's succession claim. In that regard, the DHCR stated that it would review the Applicant's claim, after she submitted all the documents the Housing Company requested. Accordingly, the DHCR instructed the Housing Company to resubmit the Applicant's file at that time.

The Housing Company then sent the Applicant a letter dated December 22, 2005. That letter informed the Applicant that the DHCR had found her succession claim incomplete. The letter also requested that the Applicant submit certain documents by February 1, 2006, to complete the evaluation of her claim, including the following items, among others: transcripts of her and the Tenants' State income tax returns for the tax years 2000 to 2004.

Apparently, the Applicant did submit those items. However, in a letter dated March 9, 2006, the Housing Company informed the Applicant that, after a review of the material she provided, it had concluded that she is not eligible for succession. The denial letter stated that, in a conversation with the Housing Company's representative, the Applicant had acknowledged that she never resided in the Apartment with her parents. In addition, the Housing Company's letter stated that although the transcripts of the Tenants' State income tax returns for the tax years 2000 to 2002 documented the Apartment's street address, the transcript for the tax year 2003 listed the Thompson Street apartment as the Tenants' current address. From that, the Housing Company found that the Tenants had never moved from their previous residence to the Apartment after the DHCR approved their application.

The Applicant challenged the Housing Company's decision in a letter dated March 22, 2006. At the outset, the Applicant asserted that at no time did she state that she never resided in the Apartment with her parents; further, she had submitted the required documentation since the year 2000, when they all moved into the Apartment. In that regard, the Applicant alleged that her parents had moved to the Apartment in the year 2000. She claimed that the Apartment address appeared in their certified tax documents from the year 2000 to 2002, while the papers for the year 2003 mentioned the Thompson Street address in error. The Applicant also asserted that no one in her family was at the Thompson Street address, which had been maintained for a "short time" for other family members because the rent was inexpensive. However, the Applicant continued, they no longer have any connection to that address.

The Housing Company responded to the Applicant's appeal in a letter dated May 30, 2006. In its answer, the Housing Company stated that the Applicant did not meet the applicable two-year co-residency requirement with the Tenants and provided the following explanation for that finding. The Applicant had provided various items as proof of her parents' residency. Those items, which included utility bills and other statements, indicated that the Applicant's parents currently live in New Jersey. However, to satisfy the two-year co-residency requirement for succession rights, the Hous-

- 4 -

ing Company found it necessary to request transcripts of the Applicant and her parents' State income tax returns for the years 2000 to 2004. Upon review of those transcripts, the Housing Company believed that the Applicant's parents did not move to the Apartment after the DHCR approved their application. At the time of that approval, the Tenants had resided at the Thompson Street apartment. Although their tax records for the years 2000 to 2002 documented the Apartment address, their records for the year 2003 listed the Thompson Street apartment as their address. When the Applicant submitted those records, she and the Housing Company's representative had a conversation about the discrepancy in her parents' addresses; she stated that her parents had never lived at the Housing Company's project with her and her daughter. The Housing Company concluded that since the parties did not share the Apartment for the required two-year co-residency period, the Applicant was not eligible for succession.

The Applicant responded to the Housing Company's answer in a letter postmarked July 7, 2006. In her reply, the Applicant stated that she believes she meets the two-year co-residency requirement with the Tenants, and that she provided the Housing Company with documentation of her residency. The Applicant then alleged that she, her parents and daughter had moved to the Housing Company's project after the Tenants' approval by the DHCR. As to the Thompson Street apartment, the Applicant stated that to this day, no one lives there. The Applicant repeated her denial that she had stated in any conversation with the Housing Company that she had never resided in the Apartment with her parents.

On November 29, 2006, the DHCR asked the Applicant to specify the date the Tenants vacated the Apartment. The DHCR also requested documentary evidence that the Tenants occupied the Apartment as their primary residence during the two-year period before that date. With that request, the DHCR provided the Regulations' list of the types of items she might submit. The DHCR also requested a copy of the deed to the Tenants' Medinah Court property. Finally, the DHCR requested an explanation of the fact that Robert Aiello retained a leasehold to the Thompson Street apartment.

The Applicant responded to that request in a letter dated December 18, 2006. With that letter, the Applicant resubmitted transcripts of the Tenants' State income tax returns and the Apartment's income affidavits for the years 2000 to 2004 as evidence of the years her parents resided at the Apartment and the date they moved to their current residence in New Jersey. In addition, the Applicant stated that the Thompson Street apartment had mainly been used for storage.

## APPLICABLE REGULATIONS

The DHCR's Regulations govern succession to the tenancy of apartments in projects subject to the PHFL. 9 NYCRR §§ 1727-8.1 to 1727-8.6. The right to claim succession arises when the subject apartment's tenant-of-record dies or otherwise permanently vacates the unit. 9 NYCRR § 1727-8.3(a). Only claimants who meet all of the regulatory requirements may obtain leases in their own names as successor tenants.

In particular, the Regulations permit a person to claim succession rights to the tenancy of an apartment in a Mitchell-Lama project under the following circumstances:

Case 1:08-cv-05693-LPS    Document 9-4    Filed 08/26/2008    Page 7 of 10

> if [a] tenant has permanently vacated the housing accommodation, any
> member of such tenant's family, . . . , who has resided with the tenant in
> the housing accommodation as a primary residence for . . . not less than
> two years, [and] has been listed on the [tenant-of-record's] income affida-
> vit and/or on the Notice of Change to Tenant's Family . . . , or where such
> person is a *senior citizen* or a *disabled person* . . . , for a period of not less
> than one year, immediately prior to the permanent vacating of the hous-
> ing accommodation by the tenant, . . . , may request to be named as a ten-
> ant on the lease and on the stock certificate.

9 NYCRR § 1727-8.3(a) [italics in original]. *See also* 9 NYCRR § 1727-8.5(a).

The Regulations define "family member" to include a tenant-of-record's daugh-
ter. 9 NYCRR § 1727-8.2(a)(2)(i). In addition, the tenant-of-record must advise the
housing company "in writing within [ninety] calendar days of any additions to . . . the
tenant's family who reside in the housing accommodation . . . ." Further, the tenant-of-
record must reflect "such changes . . . in all subsequent affidavits of income" that the
tenant annually submits. 9 NYCRR § 1727-3.6. *See also* 9 NYCRR § 1727-2.4.

The Regulations also define "primary residence" and specify the proof that a
person claiming succession rights must submit to meet that requirement, as follows:

> The housing accommodation in which the [succession claimant] actually
> resides and maintains a permanent and continuous physical presence.
> Proof of such residency shall be the listing of [the claimant's name] on the
> annual income affidavit and/or the filing of the Notice of Change to Ten-
> ant's Family . . . , together with other evidence, such as certified copies of
> tax returns, voting records, motor vehicle registration and driver's license,
> school registration, bank accounts, employment records, insurance poli-
> cies, and/or other pertinent documentation or facts.

9 NYCRR § 1727-8.2(a)(5). *See also* 9 NYCRR §§ 1727-2.4 [duty to report family composi-
tion] and 1727-3.6 [changes in persons occupying apartment].

## DETERMINATION

The Regulations specify three requirements to obtain succession to the tenancy of
an apartment in a Mitchell-Lama housing project. Succession claimants must: [1] be the
vacated tenant-of-record's family members; [2] have resided with the tenant in the sub-
ject apartment as their primary residence for the required qualification period; [3] have
had their names listed on a Notice of Change to Tenant's Family and/or the tenant's in-
come affidavit(s) for that same period. 9 NYCRR § 1727-8.3(a). Only claimants who
prove that they meet all three requirements are eligible to obtain succession

- 6 -

In her preliminary succession rights applications, the Applicant stated that she is the Tenants' daughter. The record in this matter contains a statement dated October 7, 1982 by Z'hour Aiello, *nee* Ech-Chahid, that she is the Applicant's mother. In addition, the record contains a translation of the Applicant's Algerian birth certificate, which states that her mother's name is Z'hour Ech-Chahid. For its part, the Housing Company acknowledged in its answer to the Applicant's appeal that the Tenants are the Applicant's parents. The Regulations permit a tenant-of-record's daughter to claim succession rights to the tenancy of an apartment in a Mitchell-Lama housing project. 9 NYCRR § 1727-8.2(a)(2)(i).

The Applicant has not claimed that she is either a senior citizen or disabled person. The translation of her birth certificate lists her date of birth. Further, the United States Attorney General's office made a consistent finding with respect to the Applicant's date of birth in her December 22, 1994-certificate of naturalization. That evidence shows that she does not meet the Regulations' definition of a "senior citizen" [9 NYCRR § 1727-8.2(a)(3)]. Nor has the Applicant alleged or submitted any evidence to show that she meets the Regulations' definition of a "disabled person" [9 NYCRR § 1727-8.2(a)(4)]. Accordingly, the applicable qualification period for the Applicant to obtain succession rights to the Apartment's tenancy is two-years before the Tenants are supposed to have permanently vacated the Apartment. 9 NYCRR § 1727-8.3(a).

In her preliminary succession rights applications, the Applicant did not state the date when the Tenants vacated the Apartment. Accordingly, the DHCR asked the Applicant to provide that information. Contrary to the Applicant's assertion in response to that inquiry, the documents she resubmitted do not show any date upon which the Tenants ostensibly vacated the Apartment. In that regard, the Tenants' letter to the Housing Company, in which they relinquished the shares of stock allocated to the Apartment to the Applicant, is the latest document in the present record showing any connection between the Tenants and the Apartment. They submitted that letter in support of the Applicant's succession claim. The date of that letter is June 9, 2004. However, they executed it before a notary on June 20, 2004. Accordingly, the DHCR will apply that date [June 20, 2004] as the basis for setting the two-year qualification period in this matter, which would have begun June 20, 2002.

The Applicant's name appears with the Tenants' names on the Apartment's annual income affidavits for the calendar years 2001, 2002, and 2003. The Applicant and the Tenants executed those income affidavits on April 24, 2002, May 1, 2003, and April 23, 2004, respectively. Taken together, the execution dates of those income affidavits cover the two-year qualification period applicable to the determination of the Applicant's potential succession rights to the Apartment's tenancy.

Other documentary evidence in the record expressly contradicts those income affidavits. In particular, the State-issued transcript of the Tenants' resident income tax return for the tax year 2003 specifically lists the Thompson Street apartment as their address. In light of that discrepancy, additional documentary evidence of the Tenants' occupancy of the Apartment as their primary residence during the applicable two-year

On March 9, 2005, the DHCR found the documentation that the Housing Company submitted in connection with the Applicant's succession claim insufficient. Accordingly, the DHCR instructed the Housing Company to submit proof of the Tenant's residence. Apparently, the Housing Company misinterpreted that as a request for proof of the Tenants' then-current residence in New Jersey. The Applicant submitted such documentation. However, the DHCR's request related to proof of the Tenants' residence in the Apartment.

Later, following the DHCR's second finding that the Applicant's documentation was insufficient, the Housing Company requested, and the Applicant submitted, additional documentation. That documentation included the transcripts of the Tenants' resident income tax returns. Based on that documentation, and the discrepancy concerning the Tenants' addresses, the Housing Company found the Applicant ineligible and denied her claim.

During the processing of this matter, the DHCR asked the Applicant for additional documentary evidence and information relevant to the issue of the Tenants' residence in the Apartment during the applicable two-year qualification period. That request included the Regulations' list of the types of evidence that the Applicant might provide. 9 NYCRR §1727-8.2(a)(5). Nevertheless, the Applicant failed to provide any such documentation.

The discrepancy between the Apartment's income affidavits and the State-issued transcripts of the Tenants' resident income tax return for tax year 2003 points to other matters that cast significant doubt on the accuracy of the income affidavits. That doubt is not overcome by the Applicant's allegation in her appeal that the use of the Thompson Street apartment as the Tenants' address was merely an "error."

When they applied to the Housing Company for an apartment, the Tenants listed the Thompson Street apartment as their residence. The DHCR's registration records for that rent stabilized unit show that Robert Aiello's tenancy of that unit dates back to at least the year 1984, when the registration system began. Those records further show that Robert Aiello entered into a renewal lease for the Thompson Street apartment that began October 1, 2000, just before he and his wife executed the lease for the Apartment on October 6, 2000. After that, Robert Aiello entered into two further renewal leases for the Thompson Street apartment. His leasehold did not end until September 30, 2003.

In her appeal, the Applicant initially alleged that the Thompson Street apartment had been maintained for a "short time" for other family members because the rent was so inexpensive. That "short time" was three years after the Tenants were supposed to have moved into the Apartment. The last renewal lease for the Thompson Street apartment reserved a monthly rent of $817.60. Later, in her response to the DHCR's inquiry, the Applicant changed her story and stated that the Thompson Street apartment had been used mainly for storage. Even if true, either of the Applicant's explanations

constitute a fraud with respect to the primary residency requirements applicable to the Thompson Street apartment under the rent stabilization system. The Applicant also asserted in her appeal and response to the DHCR's inquiry that no one in her family resided at that address. However, the telephone directory contains a current listing for an "S B Aiello," who may be a family member.

According to the on-line land title records of Monmouth County, New Jersey, the Tenants also took title to a property at 134 Medinah Court, in Howell, New Jersey. The recording date of the title documents from that event was May 23, 2001. The assessment records for that unit show it is a residential property. The fact that the Tenants took title to a residential property in New Jersey two years before they supposedly vacated the Apartment casts further doubt on the accuracy of the Apartment's income affidavits. Further, the notarization of the Apartment's income affidavit for calendar year 2003 was taken in Monmouth County, New Jersey, where the Tenants' Medinah Court residence is located.

Accordingly, the evidence in the present record does not support a conclusion that the Tenants' ever occupied the Apartment as their primary residence, much less during any part of the applicable two-year qualification period. Therefore, the Applicant cannot show that she occupied the Apartment with the Tenants during that period. As a result, her claim for succession rights to the Apartment's tenancy must fail. 9 NYCRR § 1727-8.3(a).

The Applicant failed to establish that she met the Regulations' requirements to qualify for succession rights to the Apartment's tenancy. For that reason, the Applicant's appeal provides no basis for a determination overturning the Housing Company's decision in this matter. Therefore, the NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL denies the Applicant's appeal in its entirety.

This is a final determination by the NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL. The parties to this appeal may only challenge this decision by commencing a judicial review proceeding in the New York Supreme Court under Article 78 of the Civil Practice Law and Rules. The time to commence such a judicial review proceeding is within four months after the date of this order.

**DAVID B. CABRERA,**
*Deputy Commissioner.*

Date of Mailing:     APR