```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
KAY BOURABAH,                      :
                      Plaintiff,   :
                                   :
          -against-                :
                                   :
NEW YORK STATE DIVISION OF HOUSING :
AND COMMUNITY RENEWAL and          :      08 CV 5693 (LTS)
SOUTHBRIDGE TOWERS INC.            :
                                   :
                     Defendants.   :
----------------------------------X
```

ROBERTA MARTIN declares pursuant to 28 U.S.C. § 1746:

1.    I am an Assistant Attorney General in the office
of ANDREW M. CUOMO, Attorney General of the State of New York,
attorney for defendant, New York State Division of Housing and
Community Renewal. I submit this declaration in support of
defendant's motion to dismiss plaintiff's complaint, and to
provide the Court with copies of documents in support of that
motion.

2.    Annexed hereto as Defendant's Exhibit 1, please
find a true and accurate copy of plaintiff's CPLR 5519 ( c)
motion served upon this office and received by myself.

3.    I declare under the penalties of perjury under the
laws of the United States that the foregoing statements are true
and correct.

ROBERTA MARTIN (RM-7044)

Executed August 26, 2008
New York, New York

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION   FIRST DEPARTMENT
----------------------------------------------------------------------X

In the Matter of the Application of
KAY K. BOURABAH,                                                    NOTICE OF
                                   Petitioner-Appellant,            MOTION

                                                                   Index:
FOR A JUDGMENT                                                      405818/2007
Under Article 78 of the
Civil Practice Law and Rules

        -against-

NEW YORK STATE DIVISION OF
HOUSING AND COMMUNITY RENEWAL
and SOUTHBRIDGE TOWERS, INC.,
                              Respondents-Respondents.
----------------------------------------------------------------------X

SIR/MADAM

        PLEASE TAKE NOTICE that upon the judgment of the Supreme Court New York

County (Solomon, J) as entered in the Office of the County Clerk on the 6th day of March,

2008 and the Notice of Appeal dated the 21st day of April, 2008 and upon the affirmation of

Robert A. Katz affirmed the __10th__ day of July, 2008 petitioner-appellant will move before

the Justices of this Court at the courthouse located at 27 Madison Avenue in the County,

City and State of New York on the _____ day of July, 2008 at 10:00 a.m. or as soon

thereafter as counsel may be heard for an Order granting the relief of staying the landlord

Southbridge Towers Inc. who is a respondent in the Article 78 below and is a respondent-

respondent in this court from proceeding with any application for summary judgment or any

further proceeding toward eviction or restoration of motion for petitioner in the Housing

Court until this Court will hear and determine this appeal upon such schedule and conditions

as ordered by this Court relative to this application including a temporary stay of such



DEFENDANT'S
EXHIBIT
1

Housing Court proceedings until the hearing and determination of this application.

Petitioner-appellant seeks such other and further relief as this Court shall deem proper in the circumstances.

Dated  New York, New York
       July 10 , 2008

                        Yours etc.

                        Robert A. Katz
                        Attorney for Petitioner-Appellant
                        277 Broadway, Suite 1410
                        New York, NY  10007
                        (212) 587-2400, ext. 13

To:    Office of the Attorney General
       Charles Sunder
       Asst Attorney General
       Attorney for Respondent-Respondent
       New York State Division of
       Housing and Community Renewal
       120 Broadway
       New York, NY  10271
       Tel.: 212-416-8594

       and,

       Norris McLaughlin and Marcus, PA
       Att: Dean M. Roberts, Esq.
       Attorneys for Respondent
       Southbridge Towers, Inc.
       875 Third Avenue, 18th Fl.
       New York, NY  10022
       Tel.: 212-808-0700

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION   FIRST DEPARTMENT
------------------------------------------------------------------------X

In the Matter of the Application of
KAY K. BOURABAH,                                                    AFFIRMATION
                                    Petitioner-Appellant,


                                                                    Index:
FOR A JUDGMENT                                                      405818/2007
Under Article 78 of the
Civil Practice Law and Rules

          -against-

NEW YORK STATE DIVISION OF
HOUSING AND COMMUNITY RENEWAL
and SOUTHBRIDGE TOWERS, INC.,
                                    Respondents-Respondents.
------------------------------------------------------------------------X


          Robert A. Katz, being an attorney admitted to practice in the Courts of the State of

New York, affirms as follows under penalty of perjury:

          1.        I am the attorney for petitioner-appellant in the above captioned appeal and am

fully familiar with all aspects of litigation between the parties.  I now inform the Court that I

am also the attorney for the tenant in Williams v. DHCR, wherein the attorneys for

Southbridge Towers, Inc. (hereinafter the Housing Company), have noticed an appeal to this

Court from the judgment of Justice Cahn in Williams v. DHCR (Sup Ct, N.Y. County Index

106551/07), and wherein the Housing Company has yet to perfect the appeal from that

judgment entered November 21, 2007.  (Copy of Justice Cahn's judgment order/memoranda

annexed hereto as Exhibit A).

          2.        Upon examination of the Williams v. DHCR judgement, this Court will

understand that on the commonality of each proceeding, Justice Solomon followed a different

path in treating Bourabah v. DHCR which is the Article 78 judgment which is the subject on

the instant appeal wherein the tenant is confronting a summary judgment wherein the

Housing Court in all likelihood will award same to the Housing Company based upon

collateral estoppel (copy of Justice Solomon's judgment dated February 28, 2008, annexed as

Exhibit B; copy of Notice of Appeal, dated April 21, 2008 annexed as Exhibit C)

3.     As to the first two paragraphs of this affirmation, I wish now to call this

Court's attention to the following matters of pertinent interest.

      A.     As to <u>Williams v. DHCR</u>, it should be of some significance that the

            DHCR by the Attorney General failed to notice an appeal from Justice

            Cahn's judgment.

      B.     That as to <u>Bourabah v. DHCR</u>, wherein I now move for this stay at

            bar, while Justice Solomon's determination was made in February

            2008, the Housing Company did not move to restore their previously

            made motion for summary judgment in Housing Court until June 12,

            2008, which motion is now returnable July 14, 2008

4.     Thus, there is no reason here for any rush to judgment against appellant, who

is a single mother, caring for an eight year old daughter and who has lived in this apartment

since the year 2000. Appellant is prepared to show that at all times relevant, she pays the

maintenance and intends to continue to do so while this litigation goes forward. Surely this

Court can see and appreciate that there is clear divergence between Justice Cahn's holding in

<u>Williams v. DHCR</u> and Justice Solomon's ruling in the case here under appeal and that this

alone brings forth a strong reason why this Court should want to grant full and effective

review to appellant herein. Needless to say, the issues to be reviewed upon this appeal are

of public interest and transcend these litigants.

5.     Something else must now be made clear to this Court, which is that I only

enter the picture of representation at the Article 78 stage in which Justice Solomon allowed

me to submit a substitute petition.  Up until that point, the tenant Bourabah was in the jungle

of pro se and was the lamb to the slaughter by the hostile Housing Company whose motive

to recover apartments at this Mitchell-Lama has been set forth in candor in the affidavit of

the Deputy Commissioner of the DHCR wherein at paragraph 9, he states.

> ...These apartments are particularly desirable at this time
> because the Housing Company is in the process of attempting to
> leave the Mitchell-Lama program and become a private
> cooperative.  If this occurs, tenants who choose to vacate will
> be able to sell the shares allocated to their units at market
> rates...
>
> (Copy of affidavit of Richmond McCurnin sworn to August 15,
> 2007 annexed as Exhibit D)

6.    With that conflictive motive on the record, I now request that this Court

understand and appreciate that <u>Bourabah</u> and <u>Williams</u> track almost parallel periods of time

relative to the Housing Company and DHCR and the arguments and concerns of corruption

in <u>Williams</u> are replete in the record in <u>Bourabah</u> to the extent that I set same out before

Justice Solomon who elects to ignore all on the position and finding that Ms. Bourabah has

no right to due process of law and that the Court will consider nothing that was not in the

administrative record.  In doing so, she ignores the corruption concerns of Justice Cahn in

<u>Williams v. DHCR</u>, even though I presented same to Justice Solomon.  A pertinent portion

of Justice Cahn's order reads:

> ...that two high officials of DHCR residing at Southbridge, at
> least one of whom was a member of the Southbridge board of
> directors had just been arrested for corruption at Southbridge,
> dealing with manipulation of apartment.  The two officials have
> since been convicted, but counsel suggests that they might have
> still been employed by DHCR as late as Thanksgiving 2006.
>
> (Copy of <u>Williams v. DHCR</u> annexed as Exhibit A)

7.    Again, because it is not in the administrative record, Justice Solomon had no interest

in the pertinent findings of the Inspector General as voiced in the report of September 2007,

which reads in pertinent part as to Southbridge Towers as follows:

> ### Employees Disproportionately Residing in Mitchell-Lama Housing.
>
> On December 21, 2005, Mark Marcucilli, assistant director of DHCR's Housing Management Bureau, was arrested on charges that he defrauded DHCR by providing false information regarding his residency at Southbridge Towers, a Mitchell-Lama complex in lower Manhattan. Following a joint investigation by the United States Attorney for the Southern District of New York, the New York State Attorney General's Office, and the Inspector General, Marcucilli was accused of obtaining and maintaining an apartment at Southbridge, which he used periodically as his own residence, by falsely representing that his father resided with him there. Marcucilli's income was too high for him to qualify for this apartment as the sole occupant. Instead, he commenced the application process for the apartment in the names of his parents. Marcucilli was also accused of helping a personal friend to obtain and maintain an apartment at Southbridge, which the friend illegally sublet; and assisting an effort by Jody Wolfson, another DHCR employee and Southbridge resident, to illegally sell her apartment to another by falsely representing to DHCR that she lived with the person to whom she intended to transfer the apartment. The U.S. Attorney's Office also prosecuted Jody Wolfson, charging her with conspiracy and mail fraud in connection with the scheme to illegally sell her Southbridge apartment, as well as a second scheme to defraud relating to a separate Southbridge apartment owned by Wolfson's mother. It was alleged that with the assistance of Mark Marcucilli, Wolfson falsely represented to DHCR that her nephew resided with her mother, in an effort to obtain succession rights for her nephew to her mother's apartment.
>
> Marcucilli pled guilty in United States District Court for the Southern District of New York on September 28, 2006 to mail fraud; theft of United States government funds; and conspiracy to commit mail fraud and theft of United States government funds. On March 29, 2007, he was sentenced to one year and one day in federal prison. As part of this plea, he agreed to forfeit all rights to his Southbridge residence. On April 4, 2006, Wolfson pled guilty to conspiracy to commit mail fraud and mail fraud. As of the writing of this report, Wolfson has not been sentenced.

> The Marcucilli and Wolfson prosecutions raise concerns as to whether DHCR has in place adequate controls to prevent potential abuses or conflicts of interest that may arise when DHCR employees reside in Mitchell-Lama complexes. Of a randomly selected sample of 30 DHCR employees who were responsible for direct supervision of Mitchell-Lama complexes in New York City, 10, or 33.3 percent, resided in Mitchell-Lama projects or in projects that recently bought out of the program. On contrast, only 2 percent of New York City residents reside in Mitchell-Lama housing. DHCR did not require agency employees to report their residency in projects under DHCR oversight, and a DHCR official told us he didn't think the situation was a "big deal."
>
> The DHCR official did tell us that a conflict of interest would exist if an agency employee was assigned to work involving a complex in which the employee resided. In fact, our review identified such a situation, involving a DHCR employee who reviewed tenant applications for the Mitchell-Lama complex where she resided. DHCR knew, or should have known, of this conflict, as it had approved the employee's application for an apartment in the complex.
>
> (Copy of pages 29-30 of New York State Inspector General's Report of Sept. 2007 annexed as Ex-E.)

8.    Before Justice Cahn and before Justice Solomon, I raised the common challenge to NYCRR 1700 et seq., arguing that Mitchell Lama regulations, to the extent that they allow the Housing Company, a private landlord, to render factual findings that are binding upon the tenant akin to findings at trial before a Housing Court judge, violates the 14th Amendment of the United States Constitution and Article 1, Sec. 6 of the New York State Constitution.

As to this challenge of the regulation:

A.    In <u>Williams v. DHCR</u>, in accordance with proper constitutional interpretation, Justice Cahn properly does not reach the issue since he found warrant for remand for a meaningful hearing.

B.    In the circumstances as viewed by Justice Solomon, the court, in what I claim to be an abuse of discretion, elects to ignore the legal issue finding that Ms. Bourabah has no right to be accorded any semblance of due process of law.

9.    Thus, Justice Solomon has elected to ignore such Supreme Court authority as is presented in undersigned counsel's accompanying memorandum of law.

10.    A secondary but important issue before this Court on this appeal is presented in the following terms:

    A.    Almost at every juncture those who file applications at Southbridge for succession do so in the stance of pro se.  Needless to say, they are provided no real guidance as to what the tenant has to produce to the Housing Company.

    B.    In the case of appellant the Article 78 record shows via the substituted petition drawn by undersigned counsel that there were a number of objective documents which clearly supports appellant's right to succession that were not produced simply because the appellant did not realize their significance to a succession application.  An example of this is found in the fact which had to be at all times known to the Housing Company to wit that Mr. and Mrs. Aiello paid to garage their vehicle in the Southbridge garage.

    C.    Once undersigned counsel appeared at the Article 78 proceeding such objective evidence of the nature described above or matters of public records were placed before the Article 78 Court with the objective of demonstrating to that Court what Ms. Bourabah could have produced if given the opportunity for a meaningful hearing and thus to demonstrate the due process deprivation to her prejudice.

    D.    If given a right of effective appeal undersigned counsel will urge upon this Court that the Article 78 Court erred in her refusal to consider such documents for the limited purpose ascribed and to the extent there be an issue of non-

preservation, this Court will be requested to examine same in the interest of justice and for the limited scope set out herein.

11.    In addressing this stay application this court should focus on the fact that the Article 78 Court failed to make a distinction between procedural due process and substantive due process and asserted the proposition that it was okay for this biased landlord Housing Company to render factual findings and that the appellant had no right to complain as to this biased adjudication of pertinent binding facts.

12.    Justice Solomon refused to see that here there is no level playing field as the findings of the landlord Housing Company would stand by default unless the tenant appealed to the DHCR so that the first contact with a governmental authority is at an appeals stage with all the strictures of an appeal, see Gilman v. DHCR, 99 NY2d 144, 753 NYS2d 1 (2002).

13.    It should be obvious to this Court, that in every which way the tenant Bourabah meets the requirements for a stay pending appeal in accordance with CPLR 5519 (c) in that:

    A.    In order to demonstrate substantial merit, appellant has described issues both of fact and law sufficient to warrant this Court's examination.

    B.    The legal issues involved as addressed in the memorandum of law, must be examined in the public interest and might be mooted if appellant were evicted before determination.

    C.    Obviously eviction of the tenant would cause irreparable harm.


## THERE WAS A PREVIOUS APPLICATION FOR STAY WHICH WAS DENIED IN FEDERAL COURT


14.    Annexed hereto as Exhibit F is a Federal summons and complaint wherein BOURABAH has sued DHCR and the Housing Company on a claim of violation of civil

rights because of violation of procedural due process of law. Based on that complaint, undersigned counsel sought relief of injunctive stay. At a hearing where all parties were present, Federal Court Judge Swain refused the relief, but did not dismiss the complaint. The opinion she voiced was that because an appeal had been noticed to this Appellate Court, there was no finality as to the judgment on the Article 78 proceeding before Justice Solomon. Thus Judge Swain opined that stay relief could be sought in this court. Hence this application.

12.    Annexed hereto as Exhibit G, and Exhibit H, are fax notifications to the Attorney General, who represents DHCR and notification to Dean M. Roberts, Esq. of Norris McLaughlin and Marcus, P.A., who I understand will appear for the Housing Company on this application. The substance of the fax is notification that on the 11th day of July 2008, I will appear at the Clerk's Office at 11:00 AM to present this stay application before this Court.

WHEREFORE, appellant now seeks to stay the landlord from proceeding in the Housing Court on the Housing Company's application for summary judgment, pursuant to CPLR 5519 (c) while this appeal is pending and that this Court grant such other relief as to assure that the tenant Bourabah need not be concerned with any eviction until this Court has rendered determination of the instant appeal.

Dated:    New York, New York
          July 10, 2008

_____
          Robert A. Katz

Prior to judgment of justice Solomon Petitioner was denied a stay of CPLK 5704 application this has nothing to do with the instant application

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____Cahn_____          PART 4 9
                        *Justice*

Williams                    INDEX NO. _____P8807___

            - v -            MOTION DATE ___7/6/07___

                            MOTION SEQ. NO. ___Ø1___

NYS Div. of Housing          MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

                                        PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...    _____

Answering Affidavits — Exhibits _____    _____

Replying Affidavits _____    _____

Cross-Motion:  ☐ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion

RECEIVED
NOV
MOTION
OFF...
FILED
NOV 21
NEW YORK
COUNTY CLERKS OFFICE

MOTION IS DECIDED IN ACCORDANCE
WITH ACCOMPANYING MEMORANDUM
DECISION IN MOTION SEQUENCE . . . . .

FULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: __11/ 16 / 07__          _____          J.S.C.

Check one:  ☑ FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION

Check if appropriate:  ☐ DO NOT POST   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 49
--------------------------------------------------------------------------------X

In the Matter of the Application of

GWENDOLYN WILLIAMS,

                            Petitioner,

For a Judgment Pursuant to Article 78
of the Civil Practice Law and Rules

                     Index No. 105656/07

            -against-

THE NEW YORK STATE DIVISION OF HOUSING
AND COMMUNITY RENEWAL, and SOUTHBRIDGE
TOWERS, INC.,

                        Respondents.

--------------------------------------------------------------------------------X

**HERMAN CAHN, J.:**

      Petitioner Gwendolyn Williams (Williams) brings this Article 78 proceeding to nullify

orders, dated October 2, 2002, May 19, 2005 and January 2, 2007, of the New York State

Division of Housing and Community renewal (DHCR) and to stay the landlord's holdover

proceeding in Housing Court. This court signed a temporary restraining order staying further

proceedings in the holdover proceeding in the Civil Court of the City of New York, County of

New York, entitled *Southbridge Towers, Inc, v Williams*, L&T 83445/05.

      Respondent DHCR cross-moves, pursuant to CPLR 3211 and 7804, to dismiss the

petition.

                                                          001

# FACTS

This proceeding challenges the determination of the DHCR, which affirmed the decision of respondent Southbridge Towers, Inc. (Southbridge) denying Williams' request for succession rights to apartment 24K in its project. Southbridge is a project that is subject to the Private Housing Finance Law and its implementing regulations, commonly known as a Mitchell-Lama project.

The tenant of record of apartment 24K was Joseph Tucker, Sr. His son, Joseph Tucker, Jr. (Tucker), resided with him. After his father's death on April 24, 1999, Tucker sought succession rights to the apartment. The housing company denied his claim by letter dated January 3, 2002. The denial was upheld on appeal to DHCR by order dated October 2, 2002. Williams contends that Tucker was never informed of the denial, and thought that the matter was still undecided. The housing company did not pursue eviction proceedings against Tucker. Tucker submitted an income affidavit for calendar year 2000, in which he certified that he and his nephew, Bryan Strothers, occupied the apartment. Tucker listed himself as the sole resident for calendar years 2001 through 2003.

Tucker died on September 12, 2004. Subsequently, Williams sought succession rights to the apartment. The housing company denied the claim by letter dated November 5, 2004, on the ground that she had failed to submit documentation substantiating the regulatory requirements that she: (1) had emotional and financial interdependence with the tenant of record; and (2) resided in the apartment with the tenant of record as her primary residence for the applicable two-year time period. The housing company held that Williams could not obtain succession rights through Tucker because he had been denied such rights and was, therefore, an unauthorized

2

resident of the apartment at the time of his death.

Williams appealed the housing company's decision in a letter dated December 7, 2004. She included various anecdotes demonstrating the emotional and financial interdependence between herself and Tucker, and contended that she was disabled and that, therefore, the applicable occupancy period was one year, rather than two years.

The housing company answered Williams' appeal by letter dated December 29, 2004. The housing company enclosed income affidvits for calendar years 2002 and 2003, and stated that Williams was not entitled to succession rights because she was not named as an occupant on the affidavits.

By order dated May 19, 2005, DHCR denied Williams' appeal, and Williams commenced an Article 78 proceeding. That proceeding resulted in an order dated May 2, 2006, vacating DHCR's decision and remanding the matter to the agency for further determination. According to Williams, at oral argument on the prior Article 78 petition, counsel informed the court that he had just discovered, the day before oral argument, that two high officials of DHCR residing at Southbridge, at least one of whom was a member of the Southbridge board of directors, had just been arrested for corruption at Southbridge, dealing with manipulation of apartments. The two officials have since been convicted, but counsel suggests that they might have still been employed by DHCR as late as Thanksgiving 2006, while the appeal on remand was under consideration. Counsel expressed concern about what influence those officials might have had on the determinations regarding the Tucker apartment.

The Attorney General sought a remand of the earlier proceeding, to which petitioner consented, and which Southbridge opposed. The matter was remanded, but none of the issues

3

regarding the two DHCR officials was addressed in the subsequent order. Petitioner argues that the remand was a charade and, in this petition, seeks review of the October 2, 2002 order that denied Tucker's appeal. Williams presents evidence that not only did neither Tucker nor his attorney ever receive that order, but the landlord's attorney and the housing company also never received it during Tucker's lifetime. Consequently, petitioner maintains that it should be subject to review at this time.

Williams contends that she moved into the apartment because she was, and remains, seriously disabled. She first met Tucker in 1996. They became close and shared in many activities with family and friends. In December 2001, Williams suffered a stroke. Tucker wanted to care for her, and asked her to come live with him. She moved in with Tucker in the winter of 2002. When he could not care for her after she had major surgery, his mother assisted her. In late spring 2004, Tucker's health failed and Williams became his caretaker. Williams was named as Tucker's executrix and Tucker left her his residual estate. Williams states that Tucker was fighting with the co-op for a lease and had retained a lawyer for an appeal.

Williams' health has continued to deteriorate. She now suffers from stage five renal failure, undergoes dialysis and is awaiting a kidney transplant. She has been paying use and occupancy on the apartment at issue. There is some disagreement about whether she has been paying the full amount that was attributable to the apartment, in large part because of the attorneys' fees that Southbridge has added to her bill, but which she contends are improper.

## DISCUSSION

This matter has been in the courts for some time and the history regarding the apartment is somewhat troubling. While it seems clear that Tucker never obtained succession rights to the

apartment, it also appears that he was never informed of that denial, nor were his lawyer or the

landlord. As a result, he was denied the opportunity to review and address the determination of

his appeal. The fact that there were two officials from DHCR at Southbridge, who were later

convicted of charges relating to their role regarding apartments in the complex, raises questions

as to whether Tucker's application was handled properly. If there were any impropriety, such

impropriety may have had an effect on Williams' position in the apartment and her subsequent

attempt to gain succession rights. Unfortunately, since Tucker has died, there is no way of

knowing what informal communications may have taken place during this time period.

Nonetheless, Williams' request that the denial of Tucker's application for succession rights be

subject to review appears to merit consideration, since he was never informed of the decision.

The regulations regarding succession rights in a Mitchell-Lama development provide:

> Any other person residing with the tenant in the housing
> accommodation as a primary or principal residence, who can prove
> emotional and financial commitment and interdependence between
> such person and the tenant. Although no single factor shall be solely
> determinative, evidence which is to be considered in determining
> whether such emotional and financial commitment and
> interdependence existed shall be the income affidavit filed by the
> tenant for the housing accommodation and other evidence which may
> include, without limitation, the following factors:
>
> (a) longevity of the relationship;
>
> (b) sharing of or relying upon each other for payment of household or
> family expenses, and/or other common necessities of life;
>
> (c) intermingling of finances as evidenced by, among other things,
> joint ownership of bank accounts, personal and real property, credit
> cards, loan obligations, sharing a household budget for purposes of
> receiving government benefits, etc.;
>
> (d) engaging in family-type activities by jointly attending family
> functions, holidays and celebrations, social and recreational activities,
> etc.;

(e) formalizing of legal obligations, intentions, and responsibilities to each other by such means as executing wills naming each other as executor and/or beneficiary, granting each other a power of attorney and/or conferring upon each other authority to make health care decisions each for the other, entering into a personal relationship contract, making a domestic partnership declaration, or serving as a representative payee for purposes of public benefits, etc.;

(f) holding themselves out as family members to other family members, friends, members of the community or religious institutions, or society in general, through their works or actions;

(g) regularly performing family functions, such as caring for each other or each other's extended family members, and/or relying upon each other for daily family services; and

(h) engaging in any other pattern of behavior, agreement, or other action which evidences the intention of creating a long-term, emotionally committed relationship. In no event would evidence of a sexual relationship between such persons be required or considered.

9 NYCRR 1727-8.2 (a) (2) (ii). Williams has provided evidence of many of the enumerated factors. While it is true that Williams was not listed on the income affidavit, the regulation provides explicitly that no single factor is to be considered determinative. Here, it appears that Williams' failure to be included on the income affidavit was considered determinative, despite the regulation rejecting such an exclusive basis. It also appears that DHCR failed to note that Williams is disabled due to her severe illness and, as a result, need demonstrate only one year occupancy of the apartment. If, upon reconsideration, it is determined that Tucker was entitled to succession rights, Williams should be considered for succession rights based upon the one-year requirement rather than the two-year time frame that would otherwise apply.

## CONCLUSION

Accordingly, it is hereby

ORDERED that the petition is granted and the matter is remanded to the New York State

6

Division of Housing and Community Renewal for reconsideration of the determination dated

October 22, 2002, which denied succession rights to Joseph Tucker, Jr., and, after reviewing that

determination, reviewing the determination dated January 7, 2006, which denied succession

rights to petitioner Gwendolyn Williams; and it is further

ORDERED that the cross-motion to dismiss the petition is denied; and it is further

ORDERED that the stay of further proceedings in the action *Southbridge Towers, Inc. v*

*Williams*, L&T 83445/05, in the Civil Court of the City of New York, County of New York, is to

continue pending final resolution of the matters under review in this proceeding.

Dated: November 16, 2007

ENTER:

FILED

NOV 21 2007

NEW YORK
COUNTY CLERK'S OFFICE

_____
J.S.C.

7

Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: JANE S. SOLOMON

_____ Justice _____ PART ___

Index Number : 405818/2007

BOURABAH, KAY K.

vs.

HOUSING & COMMUNITY RENEWAL

SEQUENCE NUMBER : # 001

ARTICLE 78

INDEX NO. _____

MOTION DATE _____

MOTION SEQ. NO. _____

MOTION CAL. NO. _____

_____ on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavit — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion:  ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion

Dated: _____

JANE S. SOLOMON

☐ FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:    JANE S. SOLOMON

_____Justice

PART ____

Index Number : 405818/2007

BOURABAH, KAY K.

vs.

HOUSING & COMMUNITY RENEWAL

SEQUENCE NUMBER :  # 001

ARTICLE 78

INDEX NO. ____

MOTION DATE ____

MOTION SEQ. NO. ____

MOTION CAL. NO. ____

_____ on this motion to/for ____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... |  |
| Answering Affidavits — Exhibits |  |
| Replying Affidavits |  |

Cross-Motion    ☐ Yes    ☐ No

Upon the foregoing papers, it is ordered that this ____

Dated: ____

JANE S. SOLOMON

☐ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

declaration that DHCR's procedures violate her due process rights, which seems to duplicate relief sought under the proposed amended petition. Despite the procedural impairment, the due process challenge is addressed herein on its merits.

## BACKGROUND

Southbridge Towers is an Article II housing company organized under the Private Housing Finance Law of the State of New York, also known as the Mitchell-Lama Law, and it is the owner of the subject premises.

In October, 2000, petitioner's parents, Robert and Z'hour Aiello ("tenants", "parents" or "the Aiellos"), leased a one bedroom Mitchell-Lama apartment in the Southbridge Towers housing complex located at 333 Pearl Street in Manhattan. It is undisputed that from 1984 through December, 2003, the Aiello's also leased an apartment in a residential building located at 176 Thompson Street in Manhattan and that in 2001 they purchased a home in New Jersey.

Petitioner alleges that, about two weeks after her parents signed their lease for the Southbridge Towers apartment, petitioner and her infant daughter moved into the apartment with her parents. Thereafter, in February, 2001, the Aiellos submitted two identical "notices of change of family composition" to the housing company indicating that petitioner and petitioner's daughter had moved into the apartment.

Under the DHCR's regulations, the tenants-of-record of apartments in state aided Mitchell-Lama housing projects must execute annual income affidavits which, *inter alia*, include a list of all household members living in the apartment. The Aiellos submitted income affidavits for calendar years 2000 through 2003 that list the Aiellos, petitioner and petitioner's daughter as the apartment's occupants.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 55
------------------------------------------------------------X

In the Matter of the Application of
KAY BOURABAH,                                          INDEX No.406818/07

                                  Petitioner,

For a Judgment Under Article 78 of
the Civil Practice Law and Rules

                                                          **DECISION AND JUDGMENT**

          -against-

NEW YORK STATE DIVISION OF HOUSING
AND COMMUNITY RENEWAL

                                  Respondent,

------------------------------------------------------------X

**JANE S. SOLOMON, J:**

          Motion sequence numbers 001, 002 and 003 are consolidated for disposition.

          In motion sequence one, petitioner, Kay Bourabah ("Bourabah" or "petitioner") moves

pursuant to CPLR Article 78 to set aside an April 20, 2007 decision of respondent, New York

State Division of Housing and Community Renewal ("DHCR") that denied petitioner's

application for succession rights to a Mitchell-Lama apartment and she also moves to dismiss the

eviction proceeding against her. DHCR cross-moves to dismiss the petition. In motion sequence

002, petitioner moves by order to show cause to amend the petition to join Southbridge Towers,

Inc. ("housing company" or "Southbridge Towers") the housing company that manages the

Mitchell-Lama complex where petitioner resides, as a respondent and to add a claim that

DHCR's procedures violate petitioner's due process rights. Petitioner also seeks to stay a

November 5, 2007 housing court trial.[1] In motion sequence 003, petitioner appears to seek a

---

[1] The court declined to sign a temporary restraining order staying the housing court
proceeding.

In September, 2003, petitioner submitted a "preliminary succession rights application" to the housing company presumably because the Aiellos' had, or were planning to, vacate the apartment. However, the application did not specify any reason for the vacancy (i.e., that the Aiellos moved out) or identify when the tenants-of-record had vacated, or would vacate, the apartment. In June, 2004, petitioner submitted a second "preliminary succession rights application" that contained the same information as the earlier submission but, even though this time the application stated that the Aiello's had vacated the apartment, it did not specify the date that they left. In addition, in support of the application, the Aiello's sent a letter to the housing company dated June 9, 2004, notarized on June 20, 2004, that stated that the Aiellos were relinquishing their shares to petitioner. Petitioner submitted a third "preliminary succession rights application" to the housing company in July, 2004.

In February, 2005, the housing company found petitioner eligible for succession and submitted her application to DHCR for the required review. DHCR rejected the application and instructed the housing company to submit proof of the Aiello's residence at Southbridge Towers. Following the housing company's re-submission, DHCR rejected the application a second time for lack of sufficient documentation of the Aiellos' residence and, thereafter, the housing company sent petitioner a letter requesting that petitioner submit, among other things, copies of tax returns for all the apartment occupants for 2000 through 2004.

Although petitioner submitted the tax returns and some additional documents, in a letter to DHCR dated May 30, 2006, the housing company concluded that petitioner was not eligible for succession because she had not cohabited with her parents in the subject apartment for two years before the Aiellos allegedly vacated the apartment in 2004 (See, 9 NYCRR Section 1727-

-3-

8.3[a][2]).  The denial letter stated, *inter alia* that, in a conversation with a housing company

representative, petitioner admitted that she had never resided in the apartment with her parents

and, in addition, the Aiellos' 2003 tax return listed Thompson Street, not Southbridge Towers, as

their current address (Record, Ex. A-10).

Petitioner challenged the housing company's decision stating that she never admitted that

she did not reside in the apartment with her parents and that the Thompson Street address on the

Aiellos' 2003 tax return was an error.  At first she claimed that the Thompson Street apartment

had been maintained for a short time for other family members but later she averred that the

apartment had been used mostly for storage.  Despite petitioner's denials, the housing company

adhered to its decision denying petitioner succession rights.  Petitioner requested administrative

review of that decision by DHCR.

In a November 29, 2006 letter DHCR requested that petitioner submit additional

documentation including, *inter alia*, the date that the tenants of record vacated the apartment and

documentary evidence that they occupied the apartment as their primary residence for two years

prior to that date (Record, Ex. A-16).  After reviewing the records, DHCR's Deputy

Commissioner, David B. Cabrera, determined that the record did not support a conclusion that

---

[2] 9 NYCRR Section 1727-8.3(a) provides in pertinent part:

> [I]f the tenant has permanently vacated the housing accommodation,
> any member of such tenant's family, . . ., who has resided with the
> tenant in the housing accommodation as a primary residence for a
> period of not less than two (2) years, has been listed on the income
> affidavit and/or on the Notice of Change to Tenant's Family . . . .
> immediately prior to the permanent vacating of the housing
> accommodation be the tenant may request to be named as a
> tenant on the lease and on the stock certificate. (Emphasis added)

the Aiellos ever occupied the apartment as their primary residence or that they occupied the apartment as their primary residence from 2002 through 2004 and, as a result, the Deputy Commissioner determined that petitioner's claim for succession rights must fail.

The Deputy Commissioner stated that because the documents that petitioner submitted do not show a date when the Aiellos vacated the apartment, he would use June 20, 2004, date that the Aeillos notarized their letter in support of petitioner's succession application, as the date for setting the two year qualification period in this matter.  Thus, it was necessary that petitioner demonstrate that the Aiellos' occupied the Southbridge Towers apartment as their primary residence from June 20, 2002 through June 20, 2004.

The Deputy Commissioner found that although petitioner's name appeared with the Aiellos on the 2001, 2002 and 2003 income affidavits, the other documentary evidence in the record, in particular the Aiellos'2003 tax return; the Aiello's 2000, 2001and 2002[3] renewal leases for the Thompson Street residence; petitioner's inconsistent statements about the purpose of the Thompson Street apartment and title documents from New Jersey showing that the Aiellos took title to a residential property in New Jersey two years before they allegedly vacated Southbridge Towers, expressly contradicted the income affidavits and do not support the conclusion that the Aiellos occupied the apartment as their primary residence from June, 2002 through June, 2004. (Record, Ex. B-1)

This Article 78 petition followed.  Petitioner commenced the proceeding pro se, but is represented by counsel on motions 02 and 03.

---

[3] The last renewal lease for the Thompson Street apartment expired on September 30, 2003.

## DISCUSSION

On judicial review of an agency action under CPLR Article 78, the courts must uphold the agency's exercise of discretion unless it has no rational basis or the action is arbitrary and capricious (*Pell v. Bd. of Ed. Union Free School District,* 34 N.Y.2d 222, 230-231[1974]). "The arbitrary and capricious test chiefly relates to whether a particular action should have been taken or is justified . . . and whether the administrative action is without foundation in fact. Arbitrary action is without sound basis in reason and is generally taken without regard to the facts" (*Pell,* 34 N.Y.2d at 231). Rationality is the key in determining whether an action is arbitrary and capricious or an abuse of discretion. The court's function is completed on a finding that a rational basis supports the agency's determination (*See, Howard v. Wyman,* 28 N.Y.2d 434 [1971]). Where the agency's interpretation is founded on a rational basis, that interpretation should be affirmed even if the court might have come to a different conclusion (*See, Mid-State Management Corp. v. NYC Conciliation and Appeals Board,* 112 A.D.2d 72 [1st Dept 1985], aff'd 66 N.Y.2d 1032 [1985]).

Moreover, where, as here, the agency's determination involves a factual evaluation within the area of the agency's expertise and is amply supported by the record, the determination must be accorded great weight and judicial deference (*Flacke v. Onondaga Landfill Systems, Inc.,* 69 N.Y.2d 355, 363 [1987]).

### A. Due Process

Petitioner claims that respondent's procedure violates due process because the agency's procedure does not provide her with a hearing and an opportunity to be heard. That claim is without merit. It is well settled that in order to claim a due process violation, an individual mus

demonstrate that he/she possesses a protected property interest sufficient to trigger due process

protections (*Matter of Daxcor Corp. v. State of N.Y. Dept. Of Health*, 90 N.Y.2d 89, 98 [1997]

[*cert. denied* 523 US 1074], citing *Board of Regents v. Roth*, 408 U.S.564; *Matter of Willie*

*Sumpter v. White Plains Housing Authority*, 29 N.Y.2d 420 [1972]; *see also, Application of*

*Cadman Plaza North v. DHPD*, 290 A.D.2d 344 [1st Dept. 2002]).

　　　In *Cadman Plaza North, Inc.* at 344, a case where the petitioner challenged, on due

process grounds, HPD's procedures regarding succession rights, the court stated:

> Property interests 'are defined by existing rules or
> understandings that stem from an independent
> source such as state law . . . .' Thus, '[i]n considering
> whether a legitimate claim of entitlement or right,
> is granted by state law, the focus is on the relevant
> statute, regulation, or contract establishing
> eligibility for the benefit at issue . . . .' Here,
> petitioner lacked such property interest with
> respect to the direct succession because, under the
> regulations, occupancy of a subject apartment is
> conditioned on respondent agency's approval
> and the form of the agreement must be
> approved by the respondent.

(Internal citations omitted)

　　　In that case, the First Department held that the agency retained discretion in directing who

may succeed to an apartment, "and it is this element of discretion that negates petitioner's claim

of a protected property interest. Thus, petitioner is not entitled to a full evidentiary hearing"

(*Cadman Plaza North, Inc. v. DHPD*, 290 A.D.2d at 344 [internal citations omitted]; *see also,*

*Pietropolo v. DHPD*, 39 A.D.3d 406 [1st Dept 2007][petitioner not entitled to an evidentiary

hearing because the regulation under which he claimed succession rights did not provide for a

hearing]; *Mayfield v. Esplanade Gardens, Inc.*, 30 A.D.3d 296 [1st Dept 2006]["Whatever the

-7-

scope of due process concerns raised by HPD's rules providing for succession rights in Mitchell-Lama housing, a full blown evidentiary or "in person" hearing was not required][internal citations omitted]). Earlier this month, the First Department again found that a petitioner challenging denial of his succession rights to a Mitchell-Lama apartment is not entitled to an evidentiary hearing because the procedures provided by the regulation to determine succession satisfy due process  *(Hochhauser v. DHPD*, 2008 WL 384223 [1ª Dept, February 13, 2008]).  In *Hochhauser*, the court held that the agency was entitled to consider inconsistencies among the documents submitted (including tax returns), and that the procedures provided for in the governing regulations satisfy due process without the need for an evidentiary hearing (*id.*).

As in *Cadman Plaza, Pietropolo, Mayfield* and *Hochhauser*, the petitioner in this case does not have the right to an "in person" administrative hearing because she does not have a protected property interest in the subject apartment. The regulations pursuant to which she is claiming succession rights give DHCR the discretion to determine who may succeed to an apartment. Here, petitioner exhausted all the protections afforded her by the statutory regulations. First, she interposed a succession rights claim with the housing company and when that claim was denied by the housing company, she commenced an administrative appeal. Dissatisfied with the administrative decision, she commenced this Article 78 proceeding. Thus, petitioner has received all the process she is due.

## B. The April 20, 2006 Decision

The Deputy Commissioner's determination that petitioner did not sustain her burden of establishing her entitlement to succession rights to her parents' apartment had a rational basis and must be upheld.[4]

To qualify for succession rights, an individual must: 1) be a family member of the former tenant of record; 2) have primarily resided with the tenant of record for two years prior to the tenant's death or vacatur and 3) have been named on the income certifications and/or notice to change family composition filed by the tenant during the two year period preceding his/her death or permanent vacatur (*See*, 9 NYCRR Section 1727-8.3(a); *Shuet Ying Lee v. DHCR*, 276 A.D.2d 444 [1st Dept 2000]).

Primary residence is defined in the regulations as the housing accommodations in which a person actually resides and maintains a permanent and continuous physical presence ( 9 NYCRR Section 1727-8.2(5). Proof of primary residence must consist of the listing of an individual on the annual income affidavit and/or the notice to change family composition coupled with other corroborating empirical evidence, including, but not limited to, tax returns, voting records, drivers license and motor vehicle registration (*See, e.g. Studley v. DHPD*, 277 A.D.2d 101 [1st Dept 2000]).

Petitioner has failed to meet her burden of proving all the elements of her succession rights claim. Petitioner asserts that the income affidavits and tax returns are proof that she co-

_____

[4] Petitioner submitted with her petition several letters and affidavits from her father and the father of her child which were not part of the administrative record. In determining this Article 78 petition, this court will not consider any documents that were not made part of the administrative record (*Rizzo v. New York State Division of Housing and Community Renewal*, 16 A.D.3d 72, 75 [1st Dept 2005], *aff'd* 6 N.Y.3d 104 [2005]).

resided with her parents in the Southbridge Towers apartment and that the apartment was her

parents' primary residence. However, while income affidavits are some proof of residency, they

are one factor among many that the agency considers in determining residency. Here, in rejecting

the application, the Deputy Commissioner was entitled to consider the inconsistencies in the

documents submitted, including: the Aiellos' continued lease of the Thompson Street apartment

through September, 2003 (Record, Ex. A-5); the Aiellos' 2001 purchase of the New Jersey

residence (Record, Ex. A-8); petitioner's inconsistent explanation regarding the use of the

Thompson Street apartment and the fact that the Aiello's provided the Thompson Street

apartment address on their 2003 tax return[5] (Record, Ex. A-10). Although the income affidavits

support petitioner's claim of primary residence, the tax return, Thompson Street leases and

records regarding the purchase of the New Jersey residence do not. Thus, the Deputy

Commissioner reasonably found that petitioner failed to meet her burden of proof on the question

of the length or even the existence of the co-residency as required by 9 NYCRR Section 1727-

8.3(a) (*See, Hochhauser v. DHPD*, 2008 WL 384323; *Studley v. DHPD*, 277 A.D.2d 101;

*Pietropolo v. DHPD*, 39 A.D.3d at 407).

Accordingly, it is ORDERED that the petition seeking to set aside the administrative

decision dated April 20, 2006 and to dismiss the eviction proceeding is denied in its entirety; and

it further is

---

[5] The Aiellos' 2001 and 2002 tax returns did use the Southbridge Towers address. The court notes, however, that an attachment to the Aiellos' 2001 tax return contains the Thompson Street address and the consolidated transcript for the Aiellos' 2004 taxes shows the New Jersey address.



ORDERED and ADJUDGED that respondent's cross motion for an order dismissing this proceeding is granted, and the petition hereby is denied and the proceeding is dismissed; and it further is

ORDERED that Motion Sequence 002, which seeks to amend the petition to add a claim that respondent's procedures regarding the determination succession rights violate due process is denied,  to amend the petition to add Southbridge, Inc. as a respondent; and to stay the Housing Court proceeding, is denied; and it further is

ORDERED that Motion Sequence 003 is denied as moot in light of the denial of her motion to amend the petition.

This decision constitutes the order and judgment of the court.


DATE: February 26, 2008



_____
                        J.S.C.
                    JANE S. SOLOMON



_____
                    CLERK




FILED

MAR – 6 2008

-11-

COUNTY CLERK'S OFFICE
NEW YORK

Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
In the Matter of the Application of
KAY K. BOURABAH,

<div style="float:right">NOTICE OF APPEAL</div>

Petitioner,

For a Judgment Pursuant to Article 78
of the Civil Practice Law and Rules,

Index No.
405818/2007

-against-

NEW YORK STATE DIVISION OF HOUSING
AND COMMUNITY RENEWAL and SOUTHBRIDGE TOWERS,
Respondent.
----------------------------------------------------------------X

SIR/MADAM:

PLEASE TAKE NOTICE that petitioner hereby appeals from the judgment entered in

the office of the County Clerk of new York County on or about the 6th day of March 2008

and served on the petitioner with due notice of entry on the 17th day of March 2008 by first

class mail.

Petitioner appeals to the Appellate Division First Department of the New York State

Supreme Court.

Petitioner appeals from each and every part of the judgment and from the whole

tenant.


Dated:       New York, New York
             April 21, 2008

Yours, etc.

_____
Robert A. Katz
Attorney for Petitioner
277 Broadway, Ste 1410
New York, NY   10007
Tel.: 212-587-2400, ext. 13

To:    Hon. Andrew M. Cuomo
       Attorney General of the State of New York
       Attorney for Respondent
       State of New York
       and New York State Division of Housing
       and Community Renewal
       120 Broadway, 2nd Floor
       New York, NY 10271
       Tel.: 212-416-6696

(and)

       Gutman, Mintz, Baker and Sonnenfeldt
       Attorney for Respondent
       Southbridge Towers Inc.
       813 Jericho Turnpike
       New Hyde Park, NY 11040
       Tel.: 516-775-7007

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION   FIRST DEPARTMENT
------------------------------------------------------------------X

In the Matter of the Application of
KAY K. BOURABAH,

                              Petitioner-Appellant,

FOR A JUDGMENT
Under Article 78 of the
Civil Practice Law and Rules

          -against-

NEW YORK STATE DIVISION OF
HOUSING AND COMMUNITY RENEWAL
and SOUTHBRIDGE TOWERS,

                              Respondents-Respondents.
------------------------------------------------------------------X

PREARGUMENT
STATEMENT

Index:
405818/2007

1.    The title of this action is as set forth in the caption.

2.    The names of the parties are set forth in the caption; there has been no change in

parties. However, it should be noted that the Supreme Court failed to set forth respondent

Southbridge Towers Inc. In the judgement.

3.    Counsel for petitioner:

            Robert A. Katz
            277 Broadway, Ste 1410
            New York, NY 10007
            Tel.: 212-587-2400, ext. 13

4.    Counsel for respondent New York State Division of Housing and Community

Renewal

            Hon. Andrew M. Cuomo
            Attorney General of the State of New York
            120 Broadway, 24th Fl.
            New York, NY 10275
            Tel.: 212-416-6696

5.    Counsel for respondent Southbridge Towers Inc.

            Gutman Mintz Baker and Sonnenfeldt
            813 Jericho Turnpike
            New Hyde Park, NY 10040

6.     This appeal is taken from the judgment of Hon. Justice Jane S.  Solomon and as was

on or about the 6th day of March 2008 in the office of the clerk of New York County (copy

of judgment annexed as Exhibit A; copy of Notice of Appeal annexed as Exhibit B.)

7.     The nature and object of so much of the Article 78 appealed from herein relates to a

constitutional attack and appellants' claims of violation of the due process and equal

protection clauses of the 14th Amendment and the same clauses as appear in the New York

State Constitution.

8.     The Court below dismissed the Article 78 proceeding.

9.     Petitioner by appeal will seek reversal on the grounds of error in law in that the Court

found appellant was not entitled to due process of law, and, in that the Court failed to

properly address the constitutional challenge wherein the tenants argued that the respondent

housing company Southbridge Towers was constitutionally infirm to be allowed the right to

make binding initial findings at the trial level which findings could then be appealed to

DHCR.


Dated:      New York, New York
            April      , 2008

                                        Yours, etc.


                                        _____
                                        Robert A. Katz
                                        Attorney for Petitioner-Appellant

Exhibit D

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
------------------------------------------x
In the Matter of the Application of

KAY K. BOURABAH,

                        Petitioner,          **ANSWERING**
                                       **AFFIDAVIT**

For a Judgment Pursuant to Article 78      **Index No.**
of the Civil Practice Law and Rules,       **405818/2007**

               - against -

**NEW YORK STATE DIVISION OF HOUSING**
**AND COMMUNITY RENEWAL,**

                       **Respondent.**
------------------------------------------x

STATE OF NEW YORK   )
                :   ss.:
COUNTY OF NEW YORK  )

     RICHMOND McCURNIN, being duly sworn, deposes and says:

     1.   I am the Assistant Commissioner for Housing Operations for the Respondent New York State Division of Housing and Community Renewal (hereinafter "DHCR"). I submit this Affidavit in support of the Respondent DHCR's Verified Answer to the Verified Petition herein. I make this Affidavit based upon personal knowledge, a review of DHCR records, and conversations with other DHCR employees.

     2.   I have been employed by DHCR since 1977, and have held my present position since 1993. My current responsibilities include supervising the operation of approximately 190 low and middle income housing developments, containing approximately 80,000 apartments, which are organized pursuant to Articles II and IV of the Private

1

II.  As a Mitchell-Lama company, SouthBridge Towers, Inc. enjoys a municipal real property tax exemption, which lowers the maintenance charges of its cooperators to below-market levels.

7.  In order to succeed to the Tenants' apartment, the Petitioner was required to establish, among other things, that she was a member of the Tenants' family, that the housing company had been notified in writing of her residency in the subject apartment at least two (2) years prior to the Tenants' permanent vacatur therefrom, and that her name and income was included on subsequent Income Affidavits. In addition, the Petitioner was required to establish that the subject apartment had been both her and the Tenants' primary residence during that time.

8.  In a decision dated April 20, 2007, DHCR denied the Petitioner's request for succession rights.  DHCR carefully reviewed the record and concluded that the Petitioner had failed to establish that she met the requirements for co-primary residency with the Tenants in the subject apartment.  A copy of the decision is annexed to the Verified Petition as Exhibit "A".

9.  Apartments at SouthBridge Towers, with their below-market maintenance charges, are highly sought after, as evidenced by the large number of lottery applications received whenever the Housing Company opens its waiting lists.  These apartments are particularly desirable at this time because the Housing Company is in the process of attempting to leave the Mitchell-Lama program and become a private

3

cooperative.  If this occurs, tenants who choose to vacate will be
able to sell the shares allocated to their units at market rates,
whereas under the Mitchell-Lama program the resale price is severely
limited by statute.   The documentary requirements for seeking
succession rights for such apartments are designed to ensure that the
Succession Regulations do not become an easy means of circumventing
the waiting list.   They are also designed to make the process for
determining entitlement to succession rights susceptible of easy
resolution, in order to ease the administrative burden involved,
screen out illegitimate claims, and avoid delays for the many eligible
individuals on a housing company's waiting list.   The administrative
record in the instant proceeding establishes that the Petitioner
failed to meet these requirements.   Thus, DHCR's conclusion that she
is not entitled to obtain succession rights is entirely warranted.

### DHCR's Statutory And Regulatory Authority

10.   The Respondent DHCR is an administrative agency charged
pursuant to PHFL §§ 32 and 32-a with the supervision of State-assisted
limited-profit housing companies created and existing pursuant to PHFL
Article II.

11.   The Legislature enacted PHFL Article II in response to a
perceived shortage of safe, sanitary, affordable housing for persons
of low and moderate income.  See PHFL §11.   In order to increase the
availability of affordable housing, the Legislature established a
program that provided government-financed low-interest loans and

4

challenged Order is entitled to judicial affirmance, and the Verified Petition should be dismissed in all respects, with costs.

WHEREFORE, the Respondent DHCR respectfully requests that the Court dismiss the Verified Petition in its entirety, together with such other and further relief as to the Court may seem just and proper.

_____
RICHMOND McCURNIN

Sworn to before me this
15th day of August, 2007

_____
NOTARY PUBLIC

Robert Ambaras
Notary Public, State of New York
No. 31-4970489
Qualified in New York County
Commission Expires August 13, 2010

Exhibit E

# State of New York
# Office of the Inspector General



# An In-Depth Review of the
# Division of Housing and Community Renewal's
# Oversight of the Mitchell-Lama Program

## September 2007

## Kristine Hamann
## State Inspector General

had no definition of "important" complaints, and could not produce a single copy of a complaint deemed important.

When complaints regarding Mitchell-Lama projects were received, they were forwarded to the DHCR field representative assigned to the very housing company that was the subject of the complaint. This occured even when the complaint concerned the performance of the DHCR representative or his or her supervisor. The representatives we interviewed told us that when they received complaints, they typically contacted the housing company or managing agent and asked them to respond, regardless of whether the complaint was against the housing company or managing agent. However, because no documentation of these contacts was maintained, we were unable to determine if complaints were handled appropriately or if there was any DHCR follow-up. Management staff said they had no means of tracking complaints made directly to the housing representatives.

### Employees Disproportionately Re    siding in Mitchell-Lama Housing

On December 21, 2005, Mark Marcucilli, assistant director of DHCR's Housing Management Bureau, was arrested on charges that he defrauded DHCR by providing false information regarding his residency at Southbridge Towers, a Mitchell-Lama complex in lower Manhattan. Following a joint investigation by the United States Attorney for the Southern District of New York, the New York State Attorney General's Office, and the Inspector General, Marcucilli was accused of obtaining and maintaining an apartment at Southbridge, which he used periodically as his own residence, by falsely representing that his father resided with him there. Marcucilli's income was too high for him to qualify for this apartment as the sole occupant. Instead, he commenced the application process for the apartment in the names of his parents. Marcucilli was also accused of helping a personal friend to obtain and maintain an apartment at Southbridge, which the friend illegally sublet; and assisting an effort by Jody Wolfson, another DHCR employee and Southbridge resident, to illegally sell her apartment to another by falsely representing to DHCR that she lived with the person to whom she intended to transfer the apartment. The U.S. Attorney's Office also prosecuted Jody Wolfson, charging her with conspiracy and mail fraud in connection with the scheme to illegally sell her Southbridge

apartment, as well as a second scheme to defraud relating to a separate Southbridge apartment owned by Wolfson's mother. It was alleged that with the assistance of Mark Marcucilli, Wolfson falsely represented to DHCR that her nephew resided with her mother, in an effort to obtain succession rights for her nephew to her mother's apartment.

Marcucilli pled guilty in United State District Court for the Southern District of New York on September 28, 2006 to mail fraud; theft of United States government funds; and conspiracy to commit mail fraud and theft of United State government funds. On March 29, 2007, he was sentenced to one year and one day in federal prison. As part of his plea, he agreed to forfeit all rights to his Southbridge residence. On April 4, 2006, Wolfson pled guilty to conspiracy to commit mail fraud and mail fraud. As of the writing of this report, Wolfson has not been sentenced.

The Marcucilli and Wolfson prosecutions raise concerns as to whether DHCR has in place adequate controls to prevent potential abuses or conflicts of interest that may arise when DHCR employees reside in Mitchell-Lama complexes. Of a randomly selected sample of 30 DHCR employees who were responsible for direct supervision of Mitchell-Lama complexes in New York City, 10, or 33.3 percent, resided in Mitchell-Lama projects or in projects that recently bought out of the program. In contrast, only 2 percent of New York City residents reside in Mitchell-Lama housing. DHCR did not require agency employees to report their residency in projects under DHCR oversight, and a DHCR official told us he didn't think this situation was a "big deal."

The DHCR official did tell us that a conflict of interest would exist if an agency employee was assigned to work involving a complex in which the employee resided. In fact, our review identified such a situation, involving a DHCR employee who reviewed tenant applications for the Mitchell-Lama complex where she resided. DHCR knew, or should have known, of this conflict, as it had approved the employee's application for an apartment in the complex.

Exhibit F

# UNITED STATES DISTRICT COURT

_____ Southern _____    District of    _____ New York _____

KAY K. BOURABAH,

       Plaintiff,

       v.

NEW YORK STATE
DIVISION OF HOUSING and
COMMUNITY RENEWAL and
SOUTHBRIDGE TOWERS INC.

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

STATE OF NEW YORK
ATTORNEY GENERAL
MANAGING ATTY'S OFC
RECEIVED

2008 JUN 27 PM 2: 34

TO: (Name and Address of Defendant)

New York State Division of    (and)    Southbridge Toewrs, Inc.
Community Renewal    Management Office
Attorney General State of New York    90 Beekman Street
120 Broadway    New York, NY  10038
New York, NY  10271

    **YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY

Robert A. Katz
277 Broadway, Ste 1410
New York, NY  10007
Tel.: 212-587-2400, ext. 13
Fax:  212-587-2410

an answer to the complaint which is served on you with this summons within 60 days after service of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

_____    _____
Clerk    Date

_____
(by) Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

KAY K. BOURABAH,

                       Plaintiff,

      -against-

NEW YORK STATE
DIVISION OF HOUSING
and COMMUNITY RENEWAL,
and SOUTHBRIDGE TOWERS INC.,

                       Defendants.
-----------------------------------------------------X

**VERIFIED
COMPLAINT**

Dkt _____

Plaintiff, by her attorney Robert A. Katz, alleges as follows:

Preliminary Statement

1.     This is an action for injunctive relief pursuant to 42 U.S.C. see 1983 to protect rights secured by the Due Process clause and the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

2.     Plaintiff in this action challenges the procedures used by the defendants to adjudicate issues that can lead to the eviction of the plaintiff without according procedural due process of law in that plaintiff challenges Sections N.Y.C.R.R. 1700 et. seq.

3.     That non-governmental employees of the landlord-defendant Southbridge Towers Inc. (Hereinafter the "Housing Company") are authorized and did make findings such as would ordinarily be made by a court on the trial level, these findings being at all times in the self interest and to the benefit and own interest of a biased Housing Company with the defendant New York State Division of Housing and Community Renewal (hereinafter "DHCR") then acting as an appellate forum wherein the plaintiff is required and did file a Petition for Administrative Review.

3.     Once defendant DHCR affirmed the findings of the defendant Housing Company plaintiff will be evicted at a pro forma ministerial proceeding in the Housing Part

of the New York City Civil Court wherein all issues have already been resolved by the Housing Company and affirmed by the defendant DHCR which prior determination precludes the Housing Court Judge from any examination of the merits.  Thus plaintiff will suffer irreparable injury of eviction from her home for which there is no adequate remedy at law.

<div align="center">Jurisdiction</div>

4.    Jurisdiction over this suit is conferred upon this Court by 28 U.S.C. see 1343 (3) as an action to redress the deprivation, under color of state law, statute, ordinance, regulation and custom or usage, of rights, privileges and immunities secured by the United States Constitution.

5.    Jurisdiction is also conferred on this Court by 28 U.S.C. sec. 1331 (a) in that the matter in controversy exceeds the value of $75,000 exclusive of interest and costs, and arises under the Constitution of the United States in that plaintiff may suffer the loss of the leasehold and shares to the subject apartment of which the plaintiff claims to be the assignee and that the termination of plaintiff's tenancy and plaintiff and her infant daughter's dislocation from the subject apartment including the damage of mental anguish and resulting discomfort, will damage plaintiff individually in excess of $75,000.

<div align="center">Parties</div>

6.    Plaintiff Kay K. Bourabah resides and occupies apartment 18B at 333 Pearl Street, in the County, City and State of New York and thus is situated in the boundaries, venue and jurisdiction of this Court.

7.    Defendant DHCR is a governmental agency or entity of New York State charged with the obligation inter alia of supervision of this Mitchell-Lama complex known as Southbridge Towers Inc..

8.    Defendant Southbridge Towers Inc. is an Article II housing company organized under the Private Housing Finance Law of the State of New York also known as the Mitchell-Lama Law and is the owner of the subject complex.

## Statutory and Regulatory Scheme

9.    DHCR authority to promulgate regulations derives from PHFL Sec 32 (3) which is a New York State statute relating to Mitchell-Lama developments. DHCR regulations applicable to Mitchell-Lama housing companies are set forth at Title 9 NYCRR, subtitle S Chapter IV parts 1700 through 1750.

10.    Plaintiff herein seeks to excise, strike and nullify the procedure under the aforementioned regulations that allow the defendant Housing Company to make binding initial findings akin to a trial court.

## Factual Allegations of Plaintiff

11.    Plaintiff at all times relevant was the daughter of decedent Z'hour Aiello and the stepdaughter of Robert J. Aiello.

12.    In or about 1984 Robert J. Aiello rented a rent stabilized apartment at 176 Thompson Street, New York, New York where he lived and stored his inventory as his work was as a licensed peddler with his tables at Prince Street, New York, New York.

13.    In 1992 the late Z'hour Aiello and Robert Aiello married and set up their home at the 176 Thompson Street apartment where they lived with the inventory and both then worked the peddler stand together.

14.    In or about 1996 the Aiellos put their names down on a waiting list for Southbridge Towers.

15.    The Aiellos obtained the subject apartment at Southbridge Towers in October 2000 and upon information and belief paid approximately $12,000 10,000 for the shares and were KB provided with a proprietary co-op lease.

16.    Prior to moving into Southbridge Towers Z'hour Aiello was diagnosed with cancer/leukemia condition.

17.    While initially the apartment at Southbridge Towers was intended and represented that the Aiellos would be the only residents when the paper work was being completed in or

about April 2000, it was subsequently decided by or at the time the Aiellos took actual

occupancy in or about October 2000 that because of the degeneration of Z'hour Aiello's

condition, that the Aiellos prevailed upon the plaintiff to move into the subject apartment at

Southbridge Towers with plaintiff's infant daughter who was then one year of age.

18.    The records of Southbridge Towers do not dispute the fact that the daughter and

infant granddaughter were disclosed upon amended forms and that plaintiff complied by

executing income affidavits along with the Aiellos.

19.    That when the Aiello's moved to Southbridge Towers they still retained the subject

176 Thompson Street apartment where they stored inventory for their peddler tables on

Prince Street. Also, from time to time a visiting guest or family member would occupy such

apartment for the duration of the visit.

20.    Also, in 2001 the Aiello's were able to purchase what they considered a weekend

house in New Jersey at the time of the purchase in 2001. The funds upon information and

belief for this purchase were not derived from income but from savings and investments.

21.    In midsummer 2003 plaintiff and the Aiello's became aware that for Mrs. Aiello to

survive she would have to undergo a bone marrow transplant. It then took some time to find

a match which was ultimately found in Mrs. Aiello's sister.

22.    At this time, after the Christmas season 2003, the Aiello's suspended the peddling

business as the doctors informed the Aiello's that it would take about a year to medically

prepare Mrs. Aiello for the transplant.

23.    In the summer of 2003 the Aiello's discussed the uncertainty of the circumstances

with the plaintiff and advised plaintiff to file an application for succession as to the subject

apartment.

24.    It is undisputed that such application was filed by plaintiff in September 2003. It is

also undisputed that the Housing Company lost the application and failed to notify plaintiff of

this fact although in September 2003 the plaintiff paid a $250 processing fee.

25.    In May 2004 Mrs. Aiello entered the hospital for work relating to the preparation for the transplant.

26.    In or about June 2004 the plaintiff presses inquiry on her first application to the Housing Company and finally learns that the application was lost.

27.    The inquiry was pressed in June 2004 because it was becoming apparent that Mrs. Aiello was in a perilous state.

28.    The day before the death of Mrs. Aiello a document was executed at Beth Israel Hospital in New York City wherein the Aiello's effected a transfer of shares and surrender of the apartment to plaintiff.  This occurred on June 20, 2004 and Mrs. Aiello died June 21, 2004.  Plaintiff avers that said transfer by assignment created a protected property interest in the plaintiff as relates to the leasehold.

29.    In the summer of 2004 the plaintiff filed a new application which was determined by the Housing Company wherein adverse findings were made by the Housing Company.

<div align="center">First Claim for Relief</div>

30.    As alleged above, defendant Housing Company is in the process of evicting the plaintiff based upon factual findings made by the Housing Company.

31.    Said findings were then affirmed by the Commissioner of the DHCR on a Petition For Administrative Review which is an appeals process.

32.    Thereafter the Supreme Court upon judicial review upholding the Commissioner ruled that under New York law found the plaintiff is not entitled to due process of law.  See Bourabah v. DHCR (Solomon, J Supreme New York County Index 4058/2007).

33.    It is submitted that the procedure of allowing the defendant Housing Company to make factual binding determinations at the trial stage wherein these determinations are made by a sales manager of the Housing Company who is not impartial in its own interest and for its own benefit violates procedural due process of law in that such determinations can only be made by a governmental official sworn to uphold the Constitution of the United States of

America and sworn to uphold the Constitution of the State of New York.

## Second Claim for Relief

34.    In no case other than in certain Mitchell-Lama's supervised by defendant DHCR is a landlord allowed under New York State Law to make initial binding trial findings.

35.    In almost every other instance and circumstances a landlord seeking to evict a tenant must file a sworn petition, application or claim to a governmental entity, i.e. Housing Court, DHCR, Housing Preservation and Development where in all circumstances the initial findings at trial level will be made under New York Law before a Judge or Administrative Law Judge who will be a government employee (attorney) who is impartial.

36.    Plaintiff avers that the issue aforedescribed must have the Court apply either strict scrutiny or at the minimum an intermediate rank of scrutiny.

37.    Plaintiff further avers that the State of New York can not justify the aforedescribed disparity on discrimination in the adjudicatory process, as relates to equal protection of law under the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

38.    WHEREFORE, plaintiffs respectfully pray that this court:

1)    Assume jurisdiction of this cause.

2)    Enter a final judgment pursuant to 28 U.S.C. §§ 2001, 2202 and Rules 54, 57 and 58 of the Federal Rules of Civil Procedure declaring the procedures used by defendant in allowing the landlord Housing company to make trial findings violate the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution, to extent that these procedures.

a)    allow the Housing Company to make initial trial findings that are made by a partial and biased non-governmental employee.

b)    fail to afford tenants an opportunity for a hearing at which they have

the right to confront and cross-examine witnesses, to subpoena witnesses and evidence, to have a verbatim transcription of the proceedings and to have a decision made solely on the evidence adduced at the hearing.

3)    Enter a permanent injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure (a) permanently enjoining defendants from continuing any of the patterns or practices enumerated in paragraph "2" of this prayer for relief, and (b) directing defendant to allow a meaningful hearing denovo at the trial level before either the Civil Court of the City of New York or an Administrative Law Judge of the defendant DHCR that will conform to constitutional requirements.

4)    Pending the hearing and determination of plaintiffs' motion for permanent injunction, grant a preliminary injunction order pursuant to Rule 65 of the Federal Rules of Civil Procedure requiring defendant to forthwith stay any proceeding in which the plaintiff could suffer eviction from the subject apartment.

5)    Grant plaintiffs their costs herein and reasonable attorneys' fees.

Dated:        New York, New York
              June  2 3    , 2008

by:  _____
              Robert A. Katz
              Attorney for Plaintiff
              277 Broadway, Suite 1410
              New York, NY  10007
              Tel.: 212-587-2400, ext. 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X

KAY K. BOURABAH,

                 Plaintiff,               VERIFICATION

    -against-                          Dkt _____

NEW YORK STATE
DIVISION OF HOUSING
and COMMUNITY RENEWAL,
and SOUTHBRIDGE TOWERS INC.,

                 Defendants.
--------------------------------------------------X

STATE OF NEW YORK       )
                            ) ss:
COUNTY OF NEW YORK   )

      KAY K. BOURABAH being duly sworn, deposes and says:

1.      that I am the plaintiff in the within action.

2.      that I have read the complaint.

3.      that I here swear to the truth and accuracy of the within complaint as to each

allegation except as to those allegations made upon information and belief and as to those

allegations I believe them to be true.

                                  _____
                                  Kay K. Bourabah

Sworn to before me this 23
day of June, 2008

_____
Notary Public
Robent A Keta
Notary Public State of New York
Qualified County of Queens
02 KA 2046368
Term expires December 31, 2009

Docket No.          Year:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAY K. BOURABAH,

Plaintiff,

-against-

NEW YORK STATE
DIVISION OF HOUSING AND COMMUNITY RENEWAL
and SOUTHBRIDGE TOWERS, INC.,

Defendants.

**COMPLAINT**

**Robert A. Katz**
ATTORNEY AT LAW
Attorney for Petitioner
277 Broadway
Ste 1410
New York, NY 10007
(212) 587-2400, x 13

To:

Attorney for

Dated,

Service of a copy of the within          is hereby admitted.

Dated:

Attorney for

======== NOTICE OF ENTRY ========

PLEASE TAKE NOTICE that the within is a true copy of

a          duly entered in the Office of the Clerk of the

within named Court on

Date:

Yours, etc.

**Robert A. Katz**
ATTORNEY AT LAW
Attorney for Petitioner
277 Broadway
Ste 1410
New York, NY 10007
(212) 587-2400, x 13

To:

===== NOTICE OF SETTLEMENT =======

PLEASE TAKE NOTICE that an order

of which the within is a true copy will be presented for

settlement to the Hon.

one of the judges of the within named Court, at

on the          day of          19

at          M.

Dated          Yours, etc.

**Robert A. Katz**
ATTORNEY AT LAW
Attorney for Petitioner
277 Broadway
Ste 1410
New York, NY 10007
(212) 587-2400, x 13

To

Attorney for

RECEIVED BY HAND
New York State
Division of Housing and Community Renewal
Office of Legal Affairs

JUN 2 7 2008

By                    AM / PM

2008 JUN 27 PM 2: 04

8/27/08

# ROBERT A. KATZ
## Attorney at Law
**277 Broadway, Suite 1410**
**New York, NY 10007**
**Tel.: 212-587-2400, x 13**
**Fax: 212-587-2410**

## FAX TRANSMITTAL SHEET

TO: _Ass't Atty General Charles Sanders_

FAX #: _212-416-6075_

FROM: _Robert A. Katz_

DATE: _July 9, 2008_

PAGES: (Including cover sheet) _1_

COMMENTS: _Boynebeh v DHCR index 406818/07_
_I am presenting CPLR 5519 (c) application for stay_
_et office of clerk App Div First Dept_
_11:00 AM July 11, 2008_

_Robert Katz_

*This telecopy transmission may contain legal information between attorney and client which is privileged and/or confidential and is intended for above-captioned recipient only.*

TRANSMISSION VERIFICATION REPORT

TIME   : 07/09/2008 11:37
NAME   : KEYRITE
FAX    : 2123859523
SER.# : BROE5F926335

```
DATE,TIME                07/09  11:37
FAX NO./NAME             12124166075
DURATION                 00:00:21
PAGE(S)                  01
RESULT                   OK
MODE                     STANDARD
                         ECM
```

Exhibit H

# ROBERT A. KATZ
## Attorney at Law
**277 Broadway, Suite 1410**
**New York, NY 10007**
**Tel.: 212-587-2400, x 13**
**Fax: 212-587-2410**

### FAX TRANSMITTAL SHEET

TO: _Dean B. Roberts Esq of Morris McLaughlin and Marcus PA_

FAX #: _212-808-0844_

FROM: _Robert A Scott_

DATE: _July 9, 2008_

PAGES: (Including cover sheet) _1_

COMMENTS: _Bornober v DMCR Index 406818/07_
_I am presenting CPLR 5519 (c) application for stay_
_at office of clerk App Div First Dept_
_11:00 AM July 11, 2008_

_This telecopy transmission may contain legal information between attorney and client which is privileged and/or confidential and is intended for above-captioned recipient only._

TRANSMISSION VERIFICATION REPORT

TIME  : 07/09/2008 11:39
NAME  : KEYRITE
FAX   : 2123859523
SER.# : BROE5F926335

DATE,TIME               07/09  11:39
FAX NO./NAME            12128080844
DURATION                00:00:20
PAGE(S)                 01
RESULT                  OK
MODE                    STANDARD
                        ECM

======== NOTICE OF ENTRY =========

• PLEASE TAKE NOTICE that the within is a true copy of

a    duly entered in the Office of the Clerk of the

within named Court on

Date:

Yours, etc.

**Robert A. Katz**
ATTORNEY AT LAW
Attorney for Petitioner
277 Broadway
Ste 1410
New York, NY 10007
(212) 587-2400, x 13

To:

======= NOTICE OF SETTLEMENT =======

PLEASE TAKE NOTICE that an order

of which the within is a true copy will be presented for
settlement to the Hon.

on the              day of

at                   M.

Dated:                            19

Yours, etc.

**Robert A. Katz**
ATTORNEY AT LAW
Attorney for Petitioner
277 Broadway
Ste 1410
New York, NY 10007
(212) 587-2400, x 13

To:

Attorney for
_____

---

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION   FIRST DEPARTMENT

Docket No.                   Year:

In the Matter of the Application of

KAY K. BOURABAH,
                                Petitioner-Appellant,

For a Judgment Pursuant to Article 78
of the Civil Practice Law and rules,

-against-

NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL
and SOUTHBRIDGE TOWERS, INC.,
                                Respondents-Respondents.

---

Notice of Motion

**Robert A. Katz**
ATTORNEY AT LAW
Attorney for Petitioner
277 Broadway
Ste 1410
New York, NY 10007
(212) 587-2400, x 13

To:

Attorney for
_____

Service of a copy of the within

is hereby admitted.

Dated,

Attorney for
_____